## Upper Darby National Bank, Appellant, *v.* Myers.

Argued May 22, 1955. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Arthur H. Hull,* with him *Thomas J. Reilly, Robert L. Rubendall, Reilly & Pearce* and *Hull, Leiby & Metzger,* for appellant.

*Frederic G. Antoun,* Deputy Attorney General, with him *Edward L. Springer,* Deputy Attorney General and *Herbert B. Cohen,* Attorney General, for appellee.

*Ernest Scott,* with him *Augustus S. Ballard* and *Pepper, Bodine, Frick, Scheetz & Hamilton,* for Fidelity-Philadelphia Trust Company, appellee.

OPINION BY MR. JUSTICE BELL, June 25, 1956:

Fidelity-Philadelphia Trust Company, whose principal place of business is in the City of Philadelphia, acquired a branch office at 242 West Baltimore Pike, Clifton Heights, as a result of a merger with the Clifton Heights National Bank on February 8, 1954. This branch office is within the limits of Clifton Heights Borough which is located in Delaware County, which in turn is contiguous to Philadelphia County.

Fidelity-Philadelphia Trust Company filed with the Department of State on September 7, 1955 an amendment to its Articles of Incorporation changing the location of its branch office at 242 West Baltimore Pike to premises known as Oak Park Shopping Center, which is two-tenths of a mile away and which is situated on the south side of West Baltimore Pike.

The proposed new location while directly across Baltimore Pike from the present location is a change of location from Clifton Heights Borough to Upper Darby Township, both of which are in Delaware County. Upper Darby Township is a large irregular township which surrounds on three sides the much smaller Borough of Clifton Heights.

The Department of Banking made a very careful study of the proposed application and approved it. The Department of Banking then forwarded, as required by law, the proposed Amendment to the Banking Board for approval or disapproval. The Banking Board, after careful consideration of the evidence, briefs, exhibits and arguments approved the proposed change of the branch office to Oak Park Shopping Center.

The Banking Board made inter alia the following material findings of fact:

"The Borough of Clifton Heights and the portion of Upper Darby Township, including the Oak Park Shopping Center have common residential, social, business, commercial and industrial interests.

. . .

"Clifton Heights Borough and the territory immediately adjacent, including the portion of Upper Darby Township in which the Oak Park Shopping Center is situated, is a rapidly growing community and the need for banking services for the residents and business interests located therein is expanding.

"The official census figures show that the population of Clifton Heights, Lansdowne, Aldan, Upper Darby Township, Hollingdale and Springfield Township which are adjacent municipalities in Delaware County, increased from 88,933 in 1940 to 127,468 in 1950. Delaware County Planning Commission studies indicate that the population of the Borough of Clifton Heights has increased 7% between 1950 and 1954 and the

population of the adjoining Borough of Aldan increased 18% during the same period.

"Fidelity-Philadelphia Trust Company is presently furnishing banking services to that community through its branch office in Clifton Heights and the proposed change of location of the branch office from 242 West Baltimore Pike to the Oak Park Shopping Center will enable it to *more adequately* and conveniently *furnish banking services* * to the portion of Clifton Heights community in the vicinity of Oak Park Shopping Center and will not decrease the quantity and quality of the services furnished by it to other portions of the community.

"Banking facilities closest to the Oak Park Shopping Center area, Upper Darby Township, excluding the branches of Fidelity-Philadelphia Trust Company at Clifton Heights and other institutions lying East of Clifton Heights with their respective distances and directions from the location of the proposed branch are as follows:

| *Institution* | *Mileage* | *Direction* |
|---|---|---|
| 1. First National Bank of Delaware County, Media | | |
| Swarthmore office | 3.4 | S.W. |
| Springfield office | 3.2 | W.N.W. |
| 2. Upper Darby National Bank | | |
| Drexel Hill Office | 2.5 | N. |
| 3. Delaware County National Bank, Chester | | |
| Sharon Hill Office | 2.6 | S.S.E. |
| 4. Broad Street Trust Company | | |
| Prospect Park Branch | 4.0 | S.W. |
| Morton National Bank Branch | 2.4 | W.S.W. |

---

* Italics, ours.

5. Interboro Bank and Trust Company, Prospect Park    3.5    S.
6. Upper Darby National Bank Branch approved for location along West Baltimore Pike, but not open    300 ft.    S.W.

"The banking facilities of the Clifton Heights Community, including the portion of Upper Darby Township in which the Oak Park Shopping Center is located adjacent to the Borough of Clifton Heights, would be inadequate without the continuance of the services furnished by the branch bank of Fidelity-Philadelphia Trust Company at 242 West Baltimore Pike, Clifton Heights, which it is proposed to relocate at the Oak Park Shopping Center in Upper Darby Township."

Briefly stated, the Banking Board in determining the adequacy or inadequacy of banking facilities in the place in which the branch bank was to be relocated, took into consideration the community or area which would be served, the population, the question whether it was a rapidly growing community and if so the likely rate of increase in population, the need for banking service for the residents and business interests located in the community, the existing residential, social, business, commercial and industrial conditions of the community or area in which the proposed branch was to be relocated, and the existing banking facilities in that community. The Banking Board concluded as a matter of law (1) "A community within the meaning of the Banking Code is not necessarily limited by municipal lines and boundaries, but may denote an area having common residential, social, business, commercial or industrial interests. (2) The Borough of Clifton Heights and the portion of Upper Darby Township including Oak Park Shopping Center are a community within the meaning of the Banking Code." (3)

The banking facilities of that community would be inadequate without the continuance of the facilities furnished by the branch bank of Fidelity-Philadelphia Trust Company which is presently located at 242 West Baltimore Pike and is to be relocated at the Oak Park Shopping Center.

The Upper Darby National Bank protests the relocation of Fidelity-Philadelphia Trust Company's branch bank, and in its appeal to this Court made three main contentions: (1) the words "other community" as used in §204(D) of the Banking Code must be construed as meaning a township or a single political subdivision such as a well defined area in an unicorporated political subdivision, and does not mean "community" as that word is generally understood; (2) in determining the adequacy of banking facilities the Banking Code does not permit the Banking Board to exclude from its consideration the services of the branch proposed to be relocated; (3) Fidelity failed to prove the banking facilities at the place of relocation were inadequate.

Considering these contentions in their inverse order, not only was the evidence sufficient to justify the Banking Board in finding that the community is without adequate banking facilities if the Fidelity's branch is excluded, but the Upper Darby National Bank had itself recognized this fact by applying on April 14, 1955 to the Comptroller of the Currency for permission to establish and operate a branch office somewhere in Upper Darby Township in the vicinity of the proposed relocation of the Fidelity's branch bank, the exact location not yet having been determined. This application of the Upper Darby National Bank was approved by the Comptroller of the Currency on July 25, 1955 on the ground, inter alia, that the locality in question was without adequate banking facilities.

Two legal questions raised by appellant have never previously been decided by this Court. The first one, and the one on which they lay most stress, is the interpretation of §204(D) of the Banking Code, with reference to the factual situation here involved. Section 204(D) reads: "Any institution may, in the case of an incorporated institution, in the manner provided in this act for an amendment to its articles . . . (2) establish a branch . . . in any place within any county contiguous to the county in which its principal place of business is located, if the city, borough or other community in which such branch is to be established is without adequate banking facilities . . ."

Appellant contends that the words "other community" refer to a political subdivision and can only mean "township", especially when taken in conjunction with §203 which refers to relocations within or without a city, borough or township in which a bank's principal place of business or branch is located. We do not agree with this contention which is based on the principle of a ejusdem generis and which appellant frankly admits is a narrow technical interpretation. The Legislature knew how to use the word "township" whenever it so desired, as in §203. Community in its ordinary or popular meaning does not mean township or other political subdivision; it means an area in which there is a community of people or interests, such as in this case banking interests or banking facilities. In rural counties people rarely ever know where a borough or township line begins or ends, and in making deposits or doing a banking business they rarely ever think of whether they are crossing a township or political line, nor does a bank in a rural community think of political lines when it seeks to serve a community.

In *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania,* 383 Pa. 253, 118 A. 2d 561

(which involved the establishment of a branch bank in Ardmore in a county contiguous to Philadelphia), the Secretary of Banking and all the parties *agreed* that the area or community involved included portions of Lower Merion Township, Montgomery County, and portions of Haverford Township, Delaware County, within a radius of two and one-half miles from the site of the proposed branch office. Appellant correctly says that the question here involved was not there decided; but that case proceeded on the assumption that the Department of Banking believed, and in passing upon banking applications, always acted on the basis that the word "community" meant the area served or likely to be served by the bank or branch bank, and not a political subdivision known as a township. For these reasons we agree with the Banking Board that "A community within the meaning of the Banking Code is not necessarily limited by municipal lines and boundaries, but may denote an area having common residential, social, business, commercial or industrial interests. The Borough of Clifton Heights and the portion of Upper Darby Township including Oak Park Shopping Center are a community within the meaning of the Banking Code."

The second point mainly relied on by appellant is again a highly technical but proper question, namely, may the Banking Board in determining adequacy of banking facilities exclude from its consideration the services of the branch proposed to be relocated? Once again we agree with the Banking Board's interpretation. In *Delaware County National Bank v. Campbell*, 378 Pa. 311, 106 A. 2d 416, in a case involving the right of a bank whose principal office was in Philadelphia County, to establish by merger a branch bank in a contiguous county, the Court held that the Banking Board could approve such a merger "if the city, borough or other community in which such branch is

to be established is without adequate banking facilities *excluding* the institutions which are a party to the plan of merger."

While the present case is not a case of establishing a branch in another county *by merger,* it is a case, *not of additional* banking facilities, but an application for the transfer and relocation of existing banking facilities of a branch bank to a new location within the same banking area or community; and the same test or yardstick which was applied in the Delaware County National Bank case is equally applicable in this situation.

The order of the Banking Board of Pennsylvania dated November 19, 1955 is affirmed; each party to pay its own costs.