## Dauphin Deposit Trust Company, Appellant, *v.* Myers.

Argued May 23, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Arthur Littleton,* with him *Alton W. Lick,* and *Morgan, Lewis & Bockius,* for plaintiff, appellant.

*Anne X. Alpern,* Attorney General, with her *Frederic G. Antoun,* Deputy Attorney General, for Secretary of Banking and Department of Banking, appellees.

*Robert Rubendall,* and *Hull, Leiby and Metzger,* for interested party, under Rule 46.

*Solomon Hurwitz,* with him *Hurwitz, Klein, Meyers & Benjamin,* for interested party, under Rule 46.

*Scott S. Leiby,* and *Hull, Leiby and Metzger,* for interested party, under Rule 46.

OPINION BY MR. JUSTICE BELL, September 26, 1960:

This is an appeal in the nature of certiorari from the so-called adjudication and Order of the Secretary of

Banking and the Department of Banking, *disapproving* the application of the Dauphin Deposit Trust Company (hereinafter referred to as "Dauphin Deposit") for authority to establish a branch office at 2100 North Second Street (on the northwest corner of Second and Maclay Streets) in the uptown or northwest part of Harrisburg.

The purpose of the proposed branch is primarily to conveniently and adequately service, and secondly to retain its present depositors and borrowers, and thirdly to secure prospective customers—a natural and laudable plan. Dauphin Deposit has at the present time a very large deposit* and loan business with those who live or have a business office in the northwest part of the city. These are serviced by Dauphin Deposit's main office which is located at 213 Market Street in the downtown section of Harrisburg, more than a mile and a half away. The proposed branch office would provide complete banking services, other than trust functions, for Dauphin Deposit's depositors, borrowers and customers in the northwest area, and would consist of a modest one-story rented building with a drive-in window and off-street parking for twelve or more cars. The branch would have an assistant manager and four employes to service small loans.

The Secretary of Banking held a hearing at which the proponent and the opponents of the proposed branch bank were present and presented evidence and briefs. From the investigation of the application by the Department, the data and the evidence submitted at the hearing, the Secretary (on behalf of the Department of Banking) disapproved the application and filed an able exhaustive "adjudication" which we shall briefly summarize:

---

* Approximately $10,000,000.

## Secretary's Findings

"The population of Harrisburg in 1940 was 83,893. In 1950, the population was 89,544, an increase of 6.7%. The estimated population in 1959 is 92,000, an increase of 2.7%. The population of the area that would normally be served by the proposed branch was 40,481 in 1940. In 1950, the population of the area was 40,852, an increase of .83%. The estimated population at the present time is 43,900, an increase of 7.7%. The area is primarily residential with well established commercial and business activity along Third and Sixth Streets. There is an increasing development of business property on Second and Front Streets. The present facilities of [the present] Banks provide adequate services to their customers and their facilities will enable them to adequately accommodate a substantial volume of additional business.

"There has been no contention by the Applicant that the quantity and quality of banking services presently furnished to the area to be served by its proposed branch are inadequate to meet the [present] banking needs of that area.[*] Camp Curtin Trust Company, Central Trust Capital Bank and Keystone Trust Company furnish banking services and facilities in the area proposed to be served by the proposed branch of the Applicant of the same character as those proposed to be furnished in the area by the Applicant at the branch applied for. . . . banking services within the City of Harrisburg as a whole as well as within the area under consideration measured by both number of offices and quality of services furnished by those offices, are adequate. [The Secretary emphasized that] there is no need in the area in question for additional services and facilities such as are contemplated by the establishment of the proposed branch."

---

[*] Appellant partially disagrees with this statement.

Guide Posts for the Department

The Banking Code (Act of May 15, 1933, P.L. 624) was amended on July 3, 1957* by adding, after Section 13, a new section to read: "Section 14. Exercise of Powers.—Whenever the department or any board thereof is required or authorized by this act to approve or disapprove any action of an institution under its supervision, or to exercise any authority or power conferred upon it by this act in addition to any other standards provided for the exercise of such discretion by this act or any other law, it shall exercise such discretion in such manner as it deems necessary to insure the safe and sound conduct of the business of any institution subject to its supervision, to conserve its assets, to *maintain public confidence in the business of such institutions and to protect the public interest and the interests of depositors,* other creditors and shareholders thereof."

"Section 202-A of the Department of Banking Code, as amended, by the Act of July 3, 1957, P. L. 463, defines the general scope of supervision of institutions under the supervision of the Department of Banking in the following language: 'Except where otherwise specifically provided, the department shall enforce and administer all laws of this Commonwealth which relate to any institution, and shall exercise such general supervision over institutions *as will afford the greatest*** possible *safety* to depositors, other creditors, and shareholders thereof, *insure the safe and sound conduct of the business* of such institutions, conserve their assets, maintain the public confidence in such institutions *and protect the public interest.'* "

Section 3 of the Act of December 30, 1955, P. L. 920, 7 PS §819—204.1 provides: "Section 3. The act is

* P. L. 464, 7 PS §819-14.

** Italics throughout, ours.

amended by adding, after section two hundred three, a new section to read [pertinently as follows]: "Section 204.1. Branches. . . . B. Any institution, pursuant to a resolution of its board of directors, . . . may establish and maintain branches—(1) *with the prior written approval of the department* in the same city, borough or village in which the principal place of business of the institution proposing to take such action is located; . . .

"When an institution files an application for the establishment of a branch in the same city, borough or village in which its principal place of business is located, the department, if it finds upon investigation *that there is a need for banking services or facilities such as are contemplated by the establishment of such branch* and that all other requirements of this section have been met, shall approve the application and issue a letter of authority to the applicant institution.

"Should the department find, after the investigation above provided for, that the institution has not met the requirements of this section governing the application for the establishment of a branch or *should it find that there is not a need for banking services or facilities such as are contemplated by the establishment of such branch,* it shall disapprove the application and return the same to the institution with a statement of its reason for doing so. . . ."

### Review on Appeal

Where, as here, a statute is silent as to the right to appeal, or does not provide that the decision of the Department shall be final, conclusive or otherwise non-appealable, an appeal is allowed in the nature of a broad certiorari. Upon such a review the Court considers the entire record, including the testimony: *Cumberland Valley Savings & Loan Ass'n. v. Myers,* 396 Pa. 331, 340, 153 A. 2d 466 (1959); *Freed v. Power,* 392 Pa. 195, 198, 139 A. 2d 661 (1958); *Archbishop O'Hara's Appeal,* 389 Pa. 35, 50, 131 A. 2d 587 (1957); *Phila-*

*delphia Saving Fund Society v. Banking Board*, 383 Pa. 253, 256, 118 A. 2d 561 (1955); *Delaware County National Bank v. Campbell*, 378 Pa. 311, 316-317, 106 A. 2d 416 (1954); *Kaufman Construction Co. v. Holcomb*, 357 Pa. 514, 517-519, 55 A. 2d 534 (1947); *Twenty-First Senatorial District Nomination*, 281 Pa. 273, 279, 126 A. 566 (1924).

The Secretary of Banking and the Banking Department are better qualified and are more familiar with *all* the banks and with the banking system in Harrisburg and its general area—their strength and weaknesses, their adequacy and needs, and *any overall effect* upon the banks in that community—than a Court with our relatively limited means and opportunity for intimate knowledge thereof can possibly be. Past experience with the tragic and appalling collapse of banks in the not too distant past emphasizes the delicate nature of the banking system and the sometimes disastrous fate which befalls even sound banks when one or more banks in the general area fail. For this, among other reasons, we must recall that the Courts are not the Secretary of Banking or the Department of Banking, or the Banking Board—which like the Department is composed of banking experts—and even if we would have reached a different conclusion if we were in their position, we should not substitute our judgment for theirs.

A decision of the Department of Banking or of the Banking Board will be sustained unless it is based upon facts or conclusions which are not adequately supported by the evidence, or it committed a clear abuse of discretion, or exceeded its power, or based its decision, conclusion or Order on an erroneous interpretation of the law: *Delaware County National Bank v. Campbell*, 378 Pa. 311, 106 A. 2d 416; *Cumberland Valley Savings and Loan Association v. Myers*, 396 Pa. 331, 153 A. 2d 466; *Dauphin Deposit Trust Com-*

*pany v. Myers,* 388 Pa. 444, 130 A. 2d 686; *Philadelphia Saving Fund Society v. Banking Board of Pennsylvania,* 383 Pa. 253, 118 A. 2d 561.

### The Evidence

Dauphin Deposit contends (a) that the facts do not support the findings or the conclusions or the Order of the Department of Banking, and (b) that it has erroneously interpreted the law.

There was a widespread difference of opinion between the proponent and the opponents of the proposed branch bank—(a) as to the increase in the population of Harrisburg and particularly of this area during the last ten years, and the likely increase in population and business therein in the next ten years; and (b) as to whether the three banks in that area will in the future be able to give adequate banking services and facilities; and (c) as to whether there is now and will in the near future be a need for the banking services and facilities which the proposed branch office would provide; and (d) whether the proposed branch will affect, and if so to what extent, the banks which are already in that area.

The Secretary's findings were supported by:

(1) J. Robert Storey, President of the Camp Curtin Trust Company, and Scott S. Leiby, an officer of the Keystone Trust Company, each of whom have had long experience in banking. After reviewing the banking background of the community in question they testified unqualifiedly that the area proposed to be serviced by Dauphin Deposit is at the present time adequately and conveniently served with complete banking services and facilities of every type and description, and that there was no need for additional banking services or facilities.

(2) There was no evidence that any one of the 12,000 families or any owner or representative of the 572 stores in the area in question had ever complained

that they were not being adequately served by Appellant or by the banks already located in the area.

(3) Mr. Storey testified that in his opinion, based on an experience of almost half a century in the banking business, the establishment of a new bank or branch in this area would adversely affect 20 to 40 per cent of the accounts of his bank.

(4) Appellant offered no evidence to show the number of its present depositors or customers who lived closer to its principal office than to its proposed branch or the number who would prefer, if given a choice, to deal at the proposed branch. In spite of the alleged or actual inconvenience, Dauphin Deposit admitted it had lost only one account from that area.

(5) Appellant offered no evidence to show *in what respect* the services of each or all of the existing banks in that area provide inadequate banking services or facilities, nor, *except for the convenience* of its own depositors and customers, did it state how its branch intends to remedy any particular inadequacy which may exist.

(6) Each of the existing banks offers full commercial facilities to the public similar to those proposed by appellant, and in addition offers full trust facilities. No point in this area is located more than one-half a mile from one of the present banks or their branch offices. Each bank at considerable expense has provided either parking or drive-in facilities, or both, for the benefit of their depositors, their customers and the public.

(7) The Controller of the Currency rejected about a year ago an application by a national bank for a branch to be located about three blocks away from Second and Maclay Streets.

(8) The Secretary found and there was competent evidence to support him that the present banks have substantially expanded their facilities since 1950; that

the present facilities of these banks provide adequate services to their depositors and customers; that their facilities will enable these banks to adequately accommodate a substantial volume of additional business; that the "banking services within the City of Harrisburg as a whole, as well as within the area under consideration measured by both number of offices and quality of services furnished by those offices are adequate; and that there is no need in the area in question for additional services and facilities such as are contemplated by the establishment of the proposed branch."

Appellant specifically contends that the Department of Banking has failed to recognize or give sufficient consideration (a) to the convenience and needs of the depositors and customers of the applicant who live or have their business in the area of the proposed branch, and (b) to the fact that the applicant which already has an enormous number of depositors and customers in the area in question, is factually and legally in a very different position from that of an applicant which is seeking to establish a new bank, and (c) the growth statistics of the applicant and of the area in general, and (d) the fact that the Department failed to expressly find that no harmful competition would result from the proposed branch. It is clear from the record that the Secretary and the Department made a very thorough examination of all pertinent facts and factors, and carefully and conscientiously evaluated all the evidence. We have considered the evidence, the findings and all of appellant's contentions which were vigorously presented, but we find no reversible error.

§204.1B

Appellant also contends that the Department misinterpreted the meaning and effect of the new §204.1B of the Banking Code (the 1955 amendment).

There is no doubt that Dauphin Deposit can support a branch bank and that the proposed branch in

the area in question would be a convenience to many of the present and future depositors and customers of Dauphin Deposit. Appellant apparently believes that this alone is sufficient "to establish a need for the services or facilities contemplated by the establishment of such a branch, within the meaning of the Act of December 30, 1955, supra." Prior to this Amendment of 1955, a bank could establish a branch office within the same city, etc., if it was "without adequate banking facilities". See Subsection D of Section 204 of the Banking Code as amended by the Act of April 22, 1937, P.L. 349. See also *Delaware County National Bank v. Campbell,* 378 Pa. 311, 106 A. 2d 416; *Upper Darby National Bank v. Myers,* 386 Pa. 12, 124 A. 2d 116. The Amendment of 1955—204.1B—provides, as we have seen, that a bank can, with the prior written approval of the Department of Banking, establish a branch in the same city when there is "a need for the banking services or facilities such as are contemplated by the establishment of such branch". Appellant contends that this change in the law which substituted "need for certain proposed services or facilities" for the prior test of "without adequate banking facilities", evidenced a legislative intent to change the law and that the only requirement today is, in essence, a need of the applicant bank or its depositors and customers for the proposed services or facilities, i.e., a more convenient service or facilities.

We do not agree with appellant's narrow construction—§204.1B cannot be isolated from the other provisions of the Banking Code or of the Department of Banking Code.

Section 14 of the Banking Code by the Amendment dated July 3, 1957, provides that the Department shall exercise its discretion to approve or disapprove any action of an institution under its supervision "in such manner as it deems necessary to insure the safe and

sound conduct of the business . . . to maintain public confidence in the business of such institutions *and to protect the public interest* and the interest of depositors, other creditors and shareholders. . . ."

Section 202A of the Department of Banking Code, as amended by the Act of July 3, 1957, P.L. 463, requires the Department, as more particularly hereinabove set forth, to supervise all banks in a way which will afford the greatest possible safety to depositors, other creditors, and share-holders, insure the safe and sound conduct of their business, and protect the public interest.

The construction which appellant places upon §204.1B (Amendment of 1955) (a) ignores the other provisions of the Banking Code and of the Department of Banking Code and (b) would greatly limit and impair the supervisory powers of the Department of Banking and (c) could at times jeopardize the safety of other banks.

As we stated in *Delaware County National Bank v. Campbell,* 378 Pa. 311, 314, 325, 106 A. 2d 416: "The Department of Banking was created not to manage or operate a bank but to supervise a bank, and to be a watchdog in the interests of depositors, creditors, shareholders and of the community in general . . . Part of the powers and duties of the Department of Banking . . . is to determine . . . whether the community served and from which a bank draws its depositors and clients has adequate banking facilities and is not overbanked . . . '. . . the clear intention of the statute in regard to establishment of branches, both by new branch and by merger, is the same: to guard against "overbanking" on the one hand, and "underbanking" on the other; . . .'. The legislature . . . did not exclude or intend to exclude competition between banks; it intended, inter alia, to exclude such competition as would likely weaken or destroy some banks in an overbanked community and

thus weaken or injure the entire banking system, to the detriment of depositors, creditors, stockholders and the public alike."

We decide that §204.1B of the Banking Code as added December 30, 1955—especially when considered in connection with §14 of the Banking Code Amendment of July 3, 1957, and §202A of the Department of Banking Code as amended July 3, 1957—means *paramountly* the need of the community (to be served) for the proposed branch services or facilities,* rather than the need of a particular bank for a branch to convenience and better service its present and future depositors and customers.

Notwithstanding the able argument of counsel for appellant, the evidence was adequate to support and justify the findings and the Order of the Secretary of Banking and of the Department of Banking, and we find no clear abuse of discretion or error of law.

Order affirmed. Each party to pay its respective costs.

---

* See for example, *Philadelphia Saving Fund Society v. Banking Board*, 383 Pa., supra.