901 A.2d 991

**TOWN OF McCANDLESS, Appellant,**

v.

**McCANDLESS POLICE OFFICERS ASSOCIATION, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided July 18, 2006.

W. Timothy Barry, Esq., Shon Kelly Worner, Esq., Canonsburg, for Town of McCandless.

Eric Carl Stoltenberg, Esq., Harrisburg, for McCandless Police Officers Association.

BEFORE: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

In this grievance arbitration appeal, this Court granted limited review to consider whether a pending grievance filed in opposition to an Act 111[1] employee's termination is rendered moot where the employee fails to attempt to grieve a separate and subsequent set of charges which also seek his termination.[2] The proper resolution of this appeal, however, requires consideration of an important predicate question: the level of deference due to the arbitrator's decision on mootness. For the reasons that follow, we hold that, in light of our narrow certiorari scope of review, the arbitrator's decision on mootness is not subject to judicial review. Accordingly, we affirm the decision below, albeit on different grounds than relied upon by the Commonwealth Court.

Appellant Town of McCandless ("McCandless"), a home rule charter municipality and political subdivision of the Commonwealth of Pennsylvania, is the public employer of McCandless police officers. Appellee McCandless Police Officers Association (the "Association") is the collective bargaining representative for McCandless police officers within the meaning of Act 111. McCandless and the Association are parties to a Collective Bargaining Agreement ("CBA") for the period at issue. Richard W. Hart, Jr., was a McCandless police officer and

1. Act of June 24, 1968, P.L. 237, *as amended,* 43 P.S. §§ 217.1–217.10. Act 111 applies only to police and fire personnel.

2. "Grievance" or "contract interpretation" arbitration is distinguished from "interest" arbitration.

"Grievance arbitration" is the arbitration which occurs when the parties disagree as to the interpretation of an existing collective bargaining agreement. "Interest arbitration" is the arbitration which occurs when the employer and employee are unable to agree on the terms of a collective bargaining agreement.

*Pennsylvania State Police v. Pennsylvania State Troopers' Ass'n (Trooper James Betancourt),* 540 Pa.66, 656 A.2d 83, 85 n. 2 (1995) (citation omitted) (hereinafter *Betancourt* ). *Accord Tp. of Moon v. Police Officers of Moon Tp.,* 508 Pa. 495, 498 A.2d 1305, 1308 n. 5 (1985).

president of the Association. At the end of his shift on the morning of September 19, 2002, Hart engaged in a verbal dispute with Sergeant Brian Madden.[3] Sergeant Madden subsequently requested that the Chief of Police subject Hart to disciplinary action for his conduct. In a letter dated September 30, 2002, the town manager notified Hart that a special meeting of the McCandless Town Council was being held on October 9, 2002, regarding his continuing employment. The town manager also enclosed a letter from the Chief to Hart with a statement of the charges against him. The letter informed Hart that he had violated various sections of the Police Department's rules and regulations (conduct unbecoming an officer, insubordination and other violations), for which he was being suspended without pay pending a special meeting of the town council convened to consider the Chief's recommendation to discharge him. The letter further informed Hart that a *Loudermill*[4] hearing was scheduled before the town council, that he no longer possessed the powers of a police officer, and that he was not to hold himself out as a police officer.

On October 9, 2002, Hart appeared at the *Loudermill* hearing. Following the hearing, the town council voted to terminate his employment based upon the September 19, 2002 incident. On October 16, 2002, the Association filed a grievance contesting Hart's termination under the CBA. The grievance alleged that Hart did not violate Police Department rules and regulations, that the discipline was discriminatory given Hart's union position, and that he was disciplined without cause. The grievance sought reinstatement with back pay.

3. McCandless alleged that, in the locker room at the end of his shift, Officer Hart was asked by another officer about a recent grievance filed by the Association which was resolved through arbitration. Hart responded with a statement which was subject to interpretation as advocating sick leave abuse in retaliation for the arbitration decisions, but said such concerted action would never happen because the police officers "were all a bunch of pussies." Sergeant Madden overheard the comments and told Hart they were inappropriate, whereupon Hart responded, "F— you, I'll say whatever I want to say."

4. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

On October 17, 2002, the McCandless town manager sent Hart a letter stating that, because he had failed to make a written request for a hearing before the Town of McCandless Personnel Board (the "Personnel Board") within seven days of the town council's vote, his October 9, 2002 discharge "is now final." On October 21, 2002, the Chief of Police, the town manager and the town council issued a joint response to the Association's grievance, asserting that police disciplinary matters were not addressed in the CBA between the town and the Association, and thus were not subject to the grievance procedure set forth in the CBA. Instead, the McCandless parties alleged that such matters were reviewable only by the Personnel Board.

Meanwhile, on October 8, 2002, the day before the town council voted to terminate his employment, Hart allegedly went to an authorized vendor for the McCandless Police Department, presented himself as an active McCandless police officer, and purchased personal items totaling $647.25, using his police clothing allowance. As a result of this separate incident, the Chief of Police sent Hart a letter dated October 14, 2002, setting forth a second statement of charges, citing Hart's misuse of the contractual clothing allowance "as additional grounds in further support of the termination of your employment." [5] Hart was also notified of a second *Loudermill* hearing before town council to be held on October 28, 2002. Neither Hart nor his counsel appeared at the October 28, 2002, hearing. At that hearing, town council voted to terminate Hart's employment based upon the October 14, 2002 statement of charges.

On October 30, 2002, the town manager notified Hart that town council had voted to terminate his employment "based

---

5. The letter stated in pertinent part that: "The following Statement of Charges sets forth additional grounds in further support of the termination of your employment which are separate and distinct from the Statement of Charges dated September 26, 2002...." The Chief further instructed Hart to return all the property he had purchased to the vendor. By letter dated October 25, 2002, Hart notified the Chief and town council that he had returned all of the items to the uniform vendor.

upon the Statement of Charges dated October 14, 2002" and that town council "approve[d] the additional grounds in further support" of Hart's termination. Hart did not file a grievance following the second hearing and termination, nor did he file an appeal to the Personnel Board. Thereafter, on November 25, 2002, the town manager notified Hart that his failure to file a second grievance or to request a hearing before the Personnel Board challenging his second termination rendered his termination final and rendered moot the proceedings pertaining to the initial grievance that he had filed.

The parties submitted the preliminary issue of the arbitrability of the grievance to an arbitrator for determination.[6] On April 8, 2003, the arbitrator issued his decision, holding that the grievance was arbitrable and ordering a hearing on the merits. The arbitrator reasoned that the broad language of the governing contractual grievance procedure, coupled with other provisions in the CBA discussing bases for disciplining police officers, established a contractual right to contest discipline via the grievance procedure. The arbitrator further rejected McCandless's mootness argument, reasoning that the Association's grievance challenged the fact of the termination of Hart's employment and not just the underlying allegations/reasons for the action. The arbitrator concluded, "[t]here is just no basis whatsoever in arbitral principles or reason why the grievant would have to file a second grievance to deal with 'additional grounds in further support of his *prior* termination.'" Arbitrator's Opinion and Award, 4/8/03, at 17.

McCandless then filed a petition for review in the Court of Common Pleas of Allegheny County, arguing that: (1) the grievance issue was moot because Hart had failed to challenge his second termination, and (2) in any event, the termination issue was not arbitrable because the McCandless Home Rule Charter required that the matter be submitted to the Personnel Board. The trial court dismissed the petition, holding that

6. In Act 111 matters, the preliminary question of arbitrability is itself a question to be determined by the arbitrator. *Township of Sugarloaf v. Bowling*, 563 Pa. 237, 759 A.2d 913, 917 (2000).

(1) the CBA specifically allowed Hart to choose between an arbitration hearing and a hearing before the Personnel Board in order to challenge the termination; and (2) with respect to mootness, the effect of Hart's failure to request a hearing or to utilize the grievance procedure a second time was a proper question for the arbitrator.

McCandless appealed to the Commonwealth Court, which affirmed in an unreported, 2–1 panel decision.[7] The panel majority noted that Act 111 arbitration rulings are subject to a narrow certiorari scope of review, which allows inquiry into only four areas: (1) the jurisdiction of the arbitrator, (2) the regularity of the proceedings, (3) whether the arbitrator exceeded his powers, and (4) whether there has been a deprivation of constitutional rights. Slip op. at 3, citing *City of Philadelphia v. Fraternal Order of Police, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291 (2001) (hereinafter, *FOP, Lodge No. 5*).[8] The panel majority then noted, however, that recent authority from that court had recognized that a different, "dual" standard applies when the issue is the preliminary question of arbitrability. Under this dual standard, if the question of arbitrability turns upon a pure question of law or upon the application of law to undisputed facts, appellate review is plenary; but if arbitrability depends upon fact-finding or an interpretation of the CBA, "the extreme deference standard" governing Act 111 awards controls. In the latter instance the court is bound by the arbitrator's determination, even though it may be manifestly unreasonable. Slip op. at 3–4, citing *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n*, 840 A.2d 1059, 1062 (Pa.Cmwlth.2004), *appeal denied*, 578 Pa. 711, 853 A.2d 363 (2004).

The panel majority then concluded that the mootness question raised by McCandless—which it characterized as whether "the arbitrator has jurisdiction when there is nothing for the

7. Senior Judge Kelley dissented without opinion.

8. "Narrow" certiorari does not describe all certiorari review; "broad certiorari," where appropriate, permits review of "the testimony and the evidence and the entire record." *Keystone Raceway Corp. v. State Harness Racing Commission*, 405 Pa. 1, 173 A.2d 97, 99 (1961).

arbitrator to arbitrate and no relief can be granted"—involved a legal question, requiring plenary review. The panel majority was persuaded by the arbitrator's reasoning on mootness; thus, the panel majority quoted the arbitrator at length and essentially adopted his analysis, adding only that "[b]ecause the second statement of charges was, in effect, only an amendment to the first statement of charges, we agree with the arbitrator that there was no need to appeal the second statement of charges." Slip op. at 4–5. Turning to the question of the availability of the CBA grievance procedure to challenge Hart's termination, the panel held that it was bound by the arbitrator's decision that disciplinary matters are covered by the CBA, thus allowing for an election between an arbitration hearing and review before the Personnel Board, because that question involved fact-finding and an interpretation of the CBA, making it subject to deference under narrow certiorari review.[9]

McCandless sought reargument, which the Commonwealth Court denied. McCandless then filed a petition for allowance of appeal, which this Court granted, limited to the single question of, "[w]hether a pending grievance filed in opposition to an Act 111 employee's termination is rendered moot following the failure to grieve subsequent charges seeking termination." *Town of McCandless v. McCandless Police Officers Ass'n*, 582 Pa. 438, 872 A.2d 1126 (2005) (*per curiam*).

◼ As the panel below recognized, the scope of review applicable to Act 111 grievance arbitration appeals is settled: narrow certiorari review, which allows the court to inquire into only four areas, obtains. *Betancourt*, 656 A.2d at 85. *See also FOP, Lodge No. 5*, 768 A.2d at 295; *Pennsylvania State Police v. Pennsylvania State Troopers Ass'n (Troopers Rodney Smith and Robert K. Johnson)*, 559 Pa. 586, 741 A.2d 1248, 1251 (1999) (hereinafter, *Smith and Johnson*). *Accord* City of *Washington v. Police Dept. of City of Washington*, 436 Pa. 168, 259 A.2d 437, 441 (1969) (construing former Supreme

9. This determination that the grievance procedure was available to challenge a job termination is not at issue on the present appeal, which involves a limited grant of review.

Court Rule 68½ and reviewing interest arbitration award).[10] An understanding of the basis for this review paradigm is of more than historical interest, as it sheds light on the proper determination of the judicial role in reviewing the mootness question.

Act 111 provides no statutory right to appellate review of an arbitration decision; to the contrary, the Act provides that arbitration awards are binding and final on the issues in dispute, and that "[n]o appeal [from an arbitration award]

**10.** In *Betancourt*, this Court held, in a unanimous opinion, that Act 111 employees may engage in grievance arbitration under Act 111, subject to the same narrow certiorari scope of review that the *Washington Arbitration Case* held was applicable to review of interest arbitration appeals. *But cf. Pennsylvania State Police v. Pennsylvania Labor Relations Bd.*, 570 Pa. 595, 810 A.2d 1240, 1247 & n. 6 (2002) (Saylor, J., dissenting) (suggesting that Act 111's deferential standard should apply only to interest arbitration). *Betancourt* also noted that the narrow certiorari test has sometimes been described—erroneously—as a standard of review:

"[S]cope of review" and "standard of review" are two distinct legal concepts. "Scope of review" refers to " 'the confines within which an appellate court must conduct its examination.' " (citation omitted). In other words, it refers to the *matters* (or "what") the appellate court is permitted to examine." [*Morrison v. Com., Dpt. of Public Welfare, Office of Mental Health (Woodville State Hosp.)*, 538 Pa.122, 646 A.2d 565, 570 (1994)]. "Standard of review," on the other hand, "refers to the *manner* in which (or "how") that examination is conducted." *Id.* As narrow certiorari sets the confines in which an appellate court may conduct its examination, it sets a *scope* of review, and not a standard of review.

656 A.2d at 85 n. 4.

Over the years, various Justices, including this author, have suggested that a greater level of scrutiny should be deemed appropriate in Act 111 appeals. *See, e.g., Smith and Johnson*, 741 A.2d at 1253–54 (Castille, J., concurring) (proposing that third area of narrow certiorari review be construed to permit review where arbitrator's decision "is manifestly unreasonable, arbitrary and capricious"); *id.* at 1254–1255 (Nigro, J. concurring) (proposing that a fifth area be added to narrow certiorari scope of review, allowing consideration of "whether the arbitration decision is repugnant to public policy or shocks the conscience of the court"). *Accord id.* at 1255–58 (Newman, J. dissenting) (proposing more exacting scrutiny of third area of certiorari review in light of, *inter alia*, considerations set forth in *Washington Arbitration Case*, which first adopted narrow certiorari scope of review for Act 111 purposes). *See also Pennsylvania State Police v. Pennsylvania Labor Relations Bd.*, *supra* (Saylor, J., dissenting). Notwithstanding these separate expressions of view, the four-part formulation stated in the text is the governing law, and it is that formulation which we will apply.

shall be allowed to any court." 43 P.S. § 217.7(a). The *Washington Arbitration Case,* an interest arbitration appeal, provided the first opportunity for this Court to address the then-new Act. In that case, we upheld this prohibition on appeals against a Pennsylvania constitutional challenge premised upon Article V, Section 9, which provides a right of appeal "to a court of record from a court not of record" and "from a court of record or from an administrative agency to a court of record or to an appellate court." In succinctly rejecting the claim, the Court, in a unanimous opinion by Justice (later Chief Justice) Roberts, noted that, "[a]n arbitration panel is neither a court nor an administrative agency." 259 A.2d at 440.

In a number of decisions in this area beginning with *Betancourt,* Mr. Justice (now Chief Justice) Cappy has detailed the reasons why the General Assembly did not authorize appellate review of Act 111 arbitration awards. As noted in *Smith and Johnson:*

> These severe limits placed on our appellate authority were not self-imposed. Rather, they were dictated by the legislature as part of a carefully crafted plan of remediation to correct flaws in the act which was the predecessor to Act 111. That defunct act, which was commonly known as the Act of 1947,[ ] caused severe and socially destabilizing problems as it prohibited police and fire personnel not only from striking but also from engaging in collective bargaining. This double denial of rights to police and fire personnel fueled the growing tension between labor and management, tension which culminated in "illegal strikes and a general breakdown in communication between public employers and their employees." [*Betancourt,* 656 A.2d] at 89.

> In creating Act 111, the legislature focused on making the division of rights and powers between management and labor more equitable. Specifically, police and fire personnel were still denied the right to strike, but this disability was offset by the granting of the right to collectively bargain. The legislature also included another provision which was meant to dissipate tensions prior to their building to a point

where labor-management relations would break down and the public safety would be jeopardized. Specifically, the legislature dictated a restraint on judicial activity in this arena, and forbad appeals from an arbitration award. 43 P.S. § 217.7(a). By ensuring the "swift resolution of disputes, [the legislature] decreased the chance that the workforce would be destabilized by protracted litigation, a state harmful to all parties." *Betancourt,* 656 A.2d at 89.

741 A.2d at 1251–52 (footnote omitted).[11] *See also Betancourt,* 656 A.2d at 89 (same; also noting that "Act 111 was created to strike a more perfect balance between the need of the Commonwealth to insure public safety and the rights of the worker"). This Court has described the limitation upon judicial review as a "linchpin" of the Act, which furthered the legislative intent of preventing Act 111 arbitration awards from bogging down in litigation. " '[An Act 111 arbitration panel's] resolution of the dispute must be sure and swift, and much of its effectiveness would be lost if the mandate of its decision could be delayed indefinitely through protracted litigation.' " *Betancourt, supra,* quoting *Washington Arbitration Case,* 259 A.2d at 440.

The fact that Act 111 did not provide for statutory appellate review did not mean, however, that no review of an arbitration award was available. At the time Act 111 was adopted, this

---

**11.** As further noted in *Betancourt,* the Act of 1947 did provide for a negotiated settlement of grievances. In *Erie Firefighters Local No. 293 of Intern. Ass'n of Firefighters v. Gardner,* 406 Pa. 395, 178 A.2d 691, 695 (1962) (affirming *per curiam* on opinion of trial judge), however, this Court ruled that the provision would be an unconstitutional delegation of legislative power to the *extent that it allowed arbitrators to* compel municipalities to enact legislation. The constitutional prohibition was remedied by constitutional amendment, adopted in 1967, which specifically authorized the General Assembly to promulgate legislation providing for binding arbitration between police and fire personnel and their public employers. *Betancourt,* 656 A.2d at 88 n. 14 (discussing PA. CONST., Art. 3, Section 31). Act 111 was adopted soon thereafter.

For a further exploration of the difficulties in the public employment area which led to the adoption of Act 111, as well as the adoption two years later of legislation affording other public employees the right to bargain collectively, *see Township of Moon,* 498 A.2d at 1308–09 nn. 6–7.

Court had in place former Supreme Court Rule 68½, which addressed circumstances where no appeal was provided by law:

"Where the subject matter does not fall within the statutory jurisdiction of the Superior Court, an appeal to the Supreme Court in the nature of a certiorari from a judgment order or decree will lie only if specially allowed by the Court or by a Judge thereof, where a statute expressly provides that there shall be no appeal from the decision or order or judgment or decree of a Court, or that the decision or order or judgment or decree of a Court shall be final or conclusive, or shall not be subject to review, or where the relevant statute is silent on the question of appellate review."

*City of Philadelphia v. Chase & Walker Corp.*, 429 Pa. 161, 240 A.2d 65, 67 (1968) (*quoting* former Supreme Court Rule 68½).[12] In the *Washington Arbitration Case*, this Court granted review by invoking Rule 68½, noting as follows:

The parameters of the review permissible under that rule are as follows:

"If an appeal is prohibited by an Act, or the decision of the Agency is stated to be final or conclusive, the law is well settled that an appeal will lie to the Courts in the nature of a narrow certiorari and this Court will review only (1) the question of jurisdiction; (2) the regularity of the proceedings before the Agency; (3) questions of excess in exercise of powers; and (4) constitutional questions: *Cf. Stape v. Civil Service Commission of City of Philadelphia*, 404 Pa.

12. Rule 68½ was promulgated in 1964 and merely set forth a procedure to effect this Court's historical King's Bench power of common law certiorari. *See Chase & Walker*, 240 A.2d at 66–67 (describing history). Given the settled nature of this review, it may safely be assumed that, in adopting Act 111 without any provision for a statutory appeal, the General Assembly was well aware that narrow certiorari review would be deemed available. In this regard, it is also notable that, when the General Assembly amended Act 111 in 1974 (repealing it in part), it did not seek to modify the scope of review as (by then) set forth in the *Washington Arbitration Case. See Appeal of Upper Providence Police Delaware County Lodge No. 27 Fraternal Order of Police*, 514 Pa. 501, 526 A.2d 315, 319 (1987) (hereinafter, *FOP, Lodge No. 27*) (describing history; concluding that General Assembly "tacitly approved" scope of review set forth in *Washington Arbitration Case* ).

354, 172 A.2d 161 (and cases cited therein); *Dauphin Deposit Trust Co. v. Myers*, 401 Pa. 230, 164 A.2d 86."

259 A.2d at 441, *quoting Keystone Raceway Corp. v. State Harness Racing Commission*, 405 Pa. 1, 173 A.2d 97, 99 (1961). The *Washington Arbitration Case* emphasized that, though limited, this review was essential because, among other things, "no adjudicatory body has unlimited discretion," and "each and every adjudicator is bound by the Constitution" and particularly by "the mandates of due process." *Id.* at 440–41.

This Court has noted that the availability of narrow certiorari review has "tempered" Act 111's prohibition on statutory appeals. *Smith and Johnson*, 741 A.2d at 1252. Although Rule 68½ was omitted from a revision of this Court's Rules in 1972, *see Community College of Beaver County v. Community College of Beaver County, Soc. of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267, 1270–71 (1977) (tracing history), it is settled that the narrow certiorari scope of review deemed appropriate in the *Washington Arbitration Case* remains applicable in Act 111 appeals. *Smith and Johnson*, 741 A.2d at 1252 n. 5; *Moon Tp.*, 498 A.2d at 1307 n. 4; *FOP, Lodge No. 27*, 526 A.2d at 318. What has changed is that an initial review no longer begins in this Court, and that, while the General Assembly has not amended Act 111 itself to explicitly recognize the prospect of narrow certiorari review (or judicial review at all), it has adopted general provisions in the Judicial Code, 42 Pa.C.S. § 101 *et seq.*, which recognize the prospect of review of such awards.[13]

13. Formal recognition of the power to review Act 111 arbitration awards via narrow certiorari, consistent with this Court's inherent powers, did not disappear with Rule 68½. In place of that Rule, this Court in 1973 initially promulgated Pa.R.J.A. 2101, which governed "Review of Arbitration Awards in Public Employment Disputes." Rule 2101 established the Commonwealth Court as the court of initial review for all such awards. *See Community College of Beaver County*, 375 A.2d at 1271 (noting, *inter alia*, that Rule 2102 derived from *Washington Arbitration Case* and Rule 68½). On July 1, 1976, Rule 2101 itself was superseded by Rule 703 of the Rules of Appellate Procedure and Rule 247 of the Rules of Civil Procedure. Under this procedural review scheme, initial jurisdiction to review arbitration awards in public employment disputes was split between the Commonwealth Court (review of arbitration awards involving employees of the Commonwealth, Ap-

Turning to the mootness question presented for review, Appellant McCandless takes no issue with the Commonwealth Court's framework for review: thus, it agrees that, although the scope of review in Act 111 arbitration matters is narrow certiorari, the standard of review is plenary because the question of mootness, which it characterizes as one implicating the arbitrator's jurisdiction, poses a pure question of law. On the merits, McCandless contends, as it has throughout, that the grievance concerning the termination of Hart's employment based upon the first statement of charges was rendered moot when neither Hart nor the Association filed a second grievance or requested a hearing before the Personnel Board with respect to the second statement of charges. McCandless argues that Hart's unchallenged termination pursuant to the second statement of charges was an intervening factual change which eliminated any actual controversy, thus rendering moot the grievance concerning the first statement of charges and termination of employment.

Appellee Association agrees with McCandless that the applicable standard of review is plenary since the mootness question involves "arbitral jurisdiction" and poses a pure question of law. On the merits, the Association argues that McCandless's mootness argument attempts to erect "formal procedural barriers to arbitration on the merits," an attempt which is antithetical to the very purpose of public sector collective bargaining laws utilizing arbitration for dispute resolution, since such legislation is designed to encourage swifter, less

pellate Rule 703), and the Courts of Common Pleas (review of arbitration awards in local public employment disputes, Civil Rule 247). *See Community College of Beaver County*, 375 A.2d at 1270–71 (summarizing history, including text of former Rules).

Rule 703 and Rule 247 were then rescinded in recognition of the fact that, with adoption of the Judicial Code, the General Assembly recognized the arbitration award review jurisdiction formerly embraced in those Rules. *See* Pa.R.A.P. 703 (Note); Pa.R.C.P. 247 (Note). *See also* 42 Pa.C.S. § 763(b) (Commonwealth Court has exclusive jurisdiction over petitions for review of statutory arbitration awards involving Commonwealth employees), § 933(b) (Court of Common Pleas has jurisdiction over petitions for review of statutory arbitration awards involving government agencies and their employees, except Commonwealth agencies).

expensive, and less formal decision-making. In the Association's view, to permit employers to stagger charges, issue multiple terminations of the same employee, and then require separate grievances would cause the Act 111 arbitration process "to become mired down in ... formal pleading." In addition, the Association argues urges that, because an employee "may be terminated only one time," McCandless's position on mootness "exceeds the bounds of logic." In this regard, the Association notes that the CBA requires the filing of a written grievance within 15 days of the "event" giving rise to the grievance. In this case, that event was Officer Hart's termination, and the Association submits that that "event did not change simply because the Town sought to pile on new charges." In the Association's view, the new charges did not "undo" Hart's existing termination and his appeal of that termination through the grievance procedure, and employers should not be permitted, or encouraged, to engage in "mock personnel proceedings" merely to erect procedural barriers to merits review of a pending grievance arbitration.

█ Preliminarily, we do not think that the question of the governing scope and standard of review is as straightforward as the parties and the Commonwealth Court panel majority would have it.[14] Generally speaking, a plenary standard of review should govern the preliminary determination of whether the issue involved implicates one of the four areas of inquiry encompassed by narrow certiorari, thus allowing for non-deferential review—unless, of course, that preliminary determination itself depended to some extent upon arbitral fact-finding or a construction of the relevant CBA. *See Pennsylvania State Police*, 840 A.2d 1062–63 (*construing FOP, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291). In other words, in the absence of the noted caveat, there is no reason in law or logic why a court should defer to the arbitrator on questions of whether jurisdiction existed, whether the proceedings were

---

14. Since the parties argue that the question here is reviewable because it implicated the arbitrator's jurisdiction, and neither argues that any of the other three bases for narrow certiorari review is implicated, we shall examine only the question of the arbitrator's jurisdiction.

regular, whether there was an excess in the exercise of the arbitrator's powers, or whether constitutional rights were deprived.

■ The difficulty with the standard of review assumption posed to this Court is that it is not at all self-evident that the question of mootness implicates the arbitrator's jurisdiction or that it ineluctably poses a purely legal question, thus allowing for plenary review. Certainly, the trial court did not hold this view, as he concluded that mootness was a proper question for the arbitrator. Neither the parties nor the Commonwealth Court panel majority explain why the trial court's conclusion was erroneous. Moreover, the panel majority's reasoning seems to beg the question, as it suggested that the arbitrator could be said to lack jurisdiction only if and after it was determined that the grievance indeed was rendered moot, thus leaving "nothing for the arbitrator to arbitrate and no relief [to] be granted." If mootness truly posed a question of arbitral **jurisdiction,** the answer should not be tautological; *i.e.,* jurisdiction over such questions should not vary depending upon the outcome of the mootness inquiry.

In addition, contrary to the assumptions of the parties and the panel majority below, it is not difficult, at least in theory, to imagine situations where the question of mootness would **not** pose a purely legal question of arbitral jurisdiction subject to plenary review. Thus, if the CBA or the grievance history/experience of the parties addressed the effect that a later set of charges would have upon a pending grievance, the question of mootness should clearly fall within the arbitrator's jurisdiction and not be subject to judicial review under narrow certiorari. On the other hand, in the absence of the parties' CBA and course of dealings actually addressing the mootness effect of separate charges, the parties do not argue that there is anything external to the agreement, in the Act 111 context, which suggests that mootness questions should, or should not, be deemed questions falling within the province of the arbitrator. Notably, in this regard, when the arbitrator here spoke to the merits of the mootness claim, he did not invoke the

statute or the parties' agreement; instead, he referred in general only to "arbitral principles and reason."

The case law on the jurisdictional aspect of narrow certiorari review provides some guidance.[15] In*FOP, Lodge No. 5,* the City argued that the arbitrator lacked jurisdiction to grant out-of-class pay because the union did not properly present such a claim in its demand for arbitration. This Court ultimately held that the claim indeed was not encompassed in the demand for arbitration and that the arbitrator lacked jurisdiction to permit the union to add the issue on the first day of arbitration hearings over the City's objection. Accordingly, we concluded, the arbitrator lacked jurisdiction to hear the claim. 768 A.2d at 296–99. *See also id.* at 298 n. 4 (recognizing Commonwealth Court authority supporting proposition that arbitrators "exceeded their jurisdiction when they considered issues which were not properly presented in the demand for arbitration") (*citing City of Philadelphia v. City of Philadelphia, Fraternal Order of Police, Lodge No. 5,* 717 A.2d 609 (Pa.Cmwlth.1998) and *Marple Tp. v. Delaware County F.O.P. Lodge 27,* 660 A.2d 211 (Pa.Cmwlth.1995)).

The case *sub judice* is not at all like *City of Philadelphia* or the Commonwealth Court decisions cited in that case. The question of mootness was squarely placed before the arbitrator. Moreover, although neither the CBA nor Act 111 itself purport to specifically authorize the arbitrator to resolve the sort of mootness question that arose here, it is more important that neither of those sources of arbitral authority, nor anything in the nature of arbitration itself ("arbitral principles," in the formulation of the arbitrator), purport to suggest that the arbitrator lacks **jurisdiction** to rule upon tangential or procedural questions that may arise in the context of a grievance arbitration.

Furthermore, and perhaps more importantly, the very nature of a mootness issue is such that it is difficult to see how it could implicate arbitral jurisdiction. Mootness

---

**15.** The majority of cases in this area have concerned the third aspect of narrow certiorari review, *i.e.,* whether the arbitrator exceeded his powers.

poses a question of justiciability and is related to the concepts of standing and ripeness; all three are concerned with the proper timing of litigation. "Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991). *See Warth v. Seldin,* 422 U.S. 490, 499 n. 10, 95 S.Ct. 2197, 2205 n. 10, 45 L.Ed.2d 343 (1975) ("The standing question thus bears close affinity to questions of ripeness— whether the harm asserted has matured sufficiently to warrant judicial intervention—and of mootness—whether the occasion for judicial intervention persists.") (citations omitted). *Accord* 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3531.12, at 50 (1984) ("Ripeness and mootness easily could be seen as the time dimensions of standing. Each assumes that an asserted injury would be adequate; ripeness then asks whether an injury that has not yet happened is sufficiently likely to happen, and mootness asks whether an injury that has happened is too far beyond a useful remedy."). This Court has addressed the mootness doctrine in similar terms:

> The cases presenting mootness problems involve litigants who clearly had standing to sue at the outset of the litigation. The problems arise from events occurring after the lawsuit has gotten under way—changes in the facts or in the law—which allegedly deprive the litigant of the necessary stake in the outcome.

*Pap's A.M. v. City of Erie,* 571 Pa. 375, 812 A.2d 591, 599–600 (2002), *quoting In re Cain,* 527 Pa. 260, 263, 590 A.2d 291, 292 (Pa.1991), *quoting* G. Gunther, Constitutional Law 1578 (9th ed.1975). Accord *U.S. Parole Commission v. Geraghty,* 445 U.S. 388, 397, 100 S.Ct. 1202, 1209, 63 L.Ed.2d 479 (1980) (mootness is "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citation omitted).

In the posture in which we find this case (given the single issue accepted for review), there is no dispute that the initial

grievance fell within the jurisdiction of the arbitrator. The timing question represented by McCandless's claim that, what was at the outset a ripe and concrete substantive grievance had since become moot, does not alter the nature of the dispute presented to the arbitrator; and thus, we see no reason why that question would not also fall within the arbitrator's jurisdiction to assess questions of the justiciability of the substantive complaint. Certainly, there is no affirmative impediment to the arbitrator's consideration of the question. Indeed, to hold otherwise, *i.e.*, to say as a matter of law that arbitrators cannot even assess such timing questions, would require judicial intervention in all such disputes. In light of the restrictions upon appellate review adopted in Act 111, the salutary reasons for those restrictions, the discrete though important purpose served by narrow certiorari review, and the nature of a mootness claim, we believe that the question of mootness was for the arbitrator, and does not fall within our scope of review.[16] Accordingly, because the arbitrator's decision must stand, we affirm the order below, albeit for a different reason than cited below, and we do not reach the merits of the mootness question.

Affirmed.

Chief Justice CAPPY, Justice NEWMAN and Justice SAYLOR and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this case.

Justice EAKIN files a concurring opinion.

Justice EAKIN, concurring.

I join the majority's decision that, in light of our narrow certiorari scope of review, the arbitrator's decision on mootness is not subject to judicial review. Appellee filed a grievance concerning the town council's October 9, 2002 decision based upon the September 19, 2002 incident; thus, the arbi-

---

**16.** The fact that mootness may pose a question of law does not change the fact that it does not implicate jurisdiction, and thus, does not trigger narrow certiorari review.

trator only had jurisdiction over that grievance. Council's October 28, 2002 decision based upon the October 8, 2002 incident was not grieved and hence became final; the arbitrator's jurisdiction is not implicated here. The arbitrator's decision involved the question of mootness relating to the only grievance before him—a matter not within our narrow certiorari scope of review.