# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Thompson, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No 918 C.D. 2015 |
| | : | Submitted: February 5, 2016 |
| Workers' Compensation Appeal | : | |
| Board (City of Philadelphia), | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                     **FILED: March 17, 2016**


In this petition for review, Robert Thompson (Claimant) asks whether the Workers' Compensation Appeal Board (Board) erred in affirming a Workers' Compensation Judge's (WCJ) decision that modified Claimant's total disability benefits due to pension offset. Claimant asserts the WCJ did specify an effective date for modification of offset, and the notice of pension offset (Offset Notice) violated Section 204(a) of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §71. The City of Philadelphia (Employer) asserts there was no error when the Board held that the offset remains in full force and effect regardless of an originally improperly calculated offset. Upon review, we affirm the Board's determination.

## I. Background

Claimant worked as a firefighter for Employer from 1974 through 2005. Dep. of Kenneth A. Kent, FSA, FCA, 9/24/13, Notes of Testimony at 16; Reproduced Record (R.R.) at 38a. Claimant received workers' compensation benefits for an occupational heart disease by order circulated on February 6, 2009 and retroactive to February 26, 2005. Claimant's weekly workers' compensation benefit was $716.00 per week. WCJ's Op. and Order (WCJ Decision), 5/12/14, at 1; R.R. at 96a. After the effective date for benefits, on July 28, 2005, Claimant retired.[1] City of Philadelphia, Municipal Retirement System Board of Pensions (Board of Pensions), Pension Maintenance Screen Shot of Robert Thompson, 9/24/13 (Pension Screen Shot); R.R. at 70a.

For years Employer paid both the full workers' compensation benefits and the full pension to Claimant. During this time, Employer did not seek a pension offset.[2]

However, on June 20, 2012, Employer issued its Offset Notice, stating that effective July 9, 2012, Employer was taking a pension offset of $645.47 against Claimant's $716 weekly workers' compensation benefits. The Offset Notice stated that the pension offset was pursuant to Section 204(a) of the Act, 77 P.S. §71.[3] Offset Notice at 2; R.R. at 5a.

---

[1] Claimant's gross monthly pension benefit was $3,688.41. City of Philadelphia, Municipal Retirement System Board of Pensions (Board of Pensions), Pension Maintenance Screen Shot of Thompson, 9/24/13; R.R. at 70a.

[2] Employer argues that Claimant received an overpayment of $213,337.72 during this time. Employer does not seek recoupment. See Br. for Resp't at 9.

[3] Section 204(a) states, in relevant part:
**(Footnote continued on next page…)**

2

Rather than taking an offset from Claimant's after-tax net pension benefit, Employer began taking an offset against Claimant's gross pension benefit. See WCJ's Op. 1-7; R.R. 94a-100a. In addition, to calculate the weekly offset, Employer divided the monthly benefits by 4 rather than by 4.34.[4] As a consequence of these miscalculations, Claimant filed a petition to review pension offset (review petition) and a penalty petition.

The WCJ denied Claimant's review petition but granted Claimant's penalty petition, finding that Employer violated the Act by failing to make the proper calculations for the pension offset. The WCJ ordered that Employer use the proper calculations going forward. The WCJ also awarded payment of an amount equal to the excess offset taken, together with interest.[5] Further, the WCJ imposed the payment of an additional amount from Employer in the form of a penalty of

---

**(continued…)**

> The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employee shall also be credited against the amount of the award made under sections 108 [occupational disease] and 306 [total and partial disability], except for benefits payable under section 306(c) [specific loss benefits] ....

77 P.S. § 71(a).

[4] Section 123.9(a) of the Bureau's regulations, 34 Pa. Code §123.9(a), states that offsets of amounts received from pension benefits are calculated on a weekly basis. However, Section 123.9(a) also requires that if an employee's pension benefit is received on a monthly basis, then the net amount contributed by the employer shall be divided by 4.34. 34 Pa. Code §123.9(a).

[5] Employer contends the underpayment was $56.14 per week, for a total of $5,501.72. Br. for Resp't at 9.

3

50% on the deferred amounts of compensation due and owing. WCJ's Op. at 6-7; R.R. at 99a-100a.

Claimant appealed the WCJ's decision to the Board. Employer did not appeal the WCJ's decision, paid the awarded penalty, paid back the deferred workers' compensation benefits with interest and corrected the calculations on Claimant's pension offset for future workers' compensation payments. Board Op. and Order, 5/7/15; R.R. at 81a-91a. On Claimant's appeal, the Board affirmed. Claimant now petitions for review to this Court.

## II. Issues

On further appeal,[6] Claimant contends that the Board erred when it affirmed the WCJ's decision modifying Claimant's total disability benefits based on a pension offset when the WCJ did not explicitly find an effective date for the modification and where the WCJ found the Offset Notice form as issued, violated the Act.

## III. Discussion

## A. Contentions

Claimant asserts that the pension offset should be stricken in its entirety, for several reasons. First, Claimant challenges the effective date of the Offset Notice. In particular, the Notice failed to comply with legal requirements in several material respects, and the WCJ made no express finding as to the effective

---

[6] This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. Department of Transportation v. Workers' Comp. Appeal Bd. (Clippinger), 38 A.3d 1037 (Pa. Cmwlth. 2011).

4

date.  Second, because there was no amended offset notice, and the original Offset Notice was fatally defective, there should be no effective date for any offset.  Am. Br. of Pet'r at 8.

Claimant argues that his situation is similar to that of the claimant in Farance v. Workers' Comp. Appeal Bd. (Marino Brothers, Inc.), 774 A.2d 785 (Pa. Cmwlth. 2001).  Although the argument is difficult to follow, Claimant seems to assert that in Marino Brothers, a claimant failed to file a Report of Benefits form, which resulted in the automatic suspension of benefits.  The claimant was precluded from receiving retroactive benefits when the form was filed later.  Here, Employer filed an Offset Notice "as meaningless as a blank page."  Am. Br. for Pet'r. at 18-20.  Like the claimant in Marino Brothers, Employer should not be allowed to take an offset retroactively effective from the date of such a defective form.

Also, the Claimant analogizes his situation to claimant in Allegis Group (Onsite) v. Workers' Comp. Appeal Bd. (Henry), 882 A.2d 1 (Pa. Cmwlth. 2005).  In that case this Court held that an employer's failure to issue a Notice of Ability to Return to Work precluded the employer from suspending benefits.  Consequently, Claimant in the current controversy argues that affirming the Board would permit employers to "slap any numbers" on an offset notice, and that not issuing a revised offset notice would be contrary to the Act and its regulatory scheme.  Am. Br. for Pet'r at 21.

In addition, Claimant argues that strict time lines and documentation must be followed in an offset.  See Gardner v. Workers' Comp. Appeal Bd.

(Genesis Health Ventures), 888 A.2d 758 (Pa. Cmwlth. 2005) (addressing timing for an employer to obtain impairment rating).

Employer responds that an offset is mandatory, as evidenced by the clear language of Section 204(a) of the Act, 77 P.S. §71(a). However, Employer did not begin taking the offset for seven years. During that time, Claimant received both his full workers' compensation benefit as well as his full pension, resulting in an overpayment of $213,337.46. Employer proved that it funded 74.893% of Claimant's pension.

Employer also asserts that Section 204(d) of the Act, 77 P.S. §71(d), directs the Department of Labor and Industry to prepare the forms necessary for the enforcement of the pension offset. In response to this directive, the Department issues a notice of pension offset form. The form states, in pertinent part: "You may challenge this offset by filing a Petition to Review Compensation Benefit Offset with the … Department …." In other words, the remedy for defects in a notice of offset is a petition to review offset, which will correct inaccuracies, not the voiding of the notice of offset. Employer argues what occurred here complies with the statutory and regulatory scheme.

Further, the employer may only take the offset as of the date of an offset notice. See Maxim Crane Works v. Workers' Comp. Appeal Bd. (Solano), 931 A.2d 816 (Pa. Cmwlth. 2007) (employer was only entitled to an offset as of the date that the claimant received the form).

6

**B. Analysis**

As noted by this Court in <u>City of Pittsburgh, and UPMC Benefit Mgmt. Svcs., Inc., v. Workers' Comp. Appeal Bd. (Wright)</u>, 90 A.3d. 801, 806 (Pa. Cmwlth. 2014):

> [T]he purpose of the Section 204(a) offset is to foster cost containment in the workers' compensation insurance arena. [T]he Legislature's clear intention [in providing an offset] was to afford effective redress to the employer paying both employer-funded pension benefits and employer-funded workers' compensation benefits. <u>The 1996 amendment to Section 204(a) of the Act [providing a pension offset] was aimed at preventing ... double recovery by a claimant receiving both a pension and workers' compensation benefits</u>.

<u>Id.</u> at 806-807 (citations omitted, emphasis added); <u>see</u> <u>also</u> 7 David B. Torrey & Andrew E. Greenberg, WORKERS' COMPENSATION LAW AND PRACTICE §12:83 (3d ed. 2008) ("The provision for a set-off grew out of employer concerns over the ability of employees to double-recover for wage losses during periods of disability.")

An employer is not required to provide evidence of actual pension contributions; rather, the employer may meet its burden of proving the extent to which it funded the pension plan (and thus the extent of its offset) with actuarial testimony. <u>See</u> <u>Pa. State Univ./PMA Ins. Grp. v. Workers' Comp. Appeal Bd. (Hensal)</u>, 911 A.2d 225, 232 (Pa. Cmwlth. 2006) (employer may present expert actuarial testimony to establish the extent employer funded a claimant's defined benefit pension for purposes of offset of workers' compensation obligation).

7

Here, Employer presented actuarial testimony from Kenneth Kent. Kent obtained information from the Board of Pensions to determine the percentage of offset from Claimant's pension benefits to which Employer would be entitled.[7] After receiving additional information, Kent issued reports that determined offset rates when factoring in Claimant's entry in a deferred retirement compensation plan.[8] Upon revision, the percentages were adjusted to 74.893% and 82.415%. WCJ's Op., Findings of Fact (F.F.) Nos. 9-11; R.R. at 98a. The WCJ accepted Kent's testimony as credible to establish Employer's entitlement to an offset of 74.893%, excluding funding from the Commonwealth. F.F. Nos. 13-14 at 4-5; R.R. at 97a-98a.

> As stated by the WCJ in her opinion:
>
> The Act does not require proof of actual contributions. Employer in this case presented competent, credible and convincing actuarial evidence to establish that [Employer] is entitled to an offset of at least 74.893 percent. This Judge has considered the testimony of Kenneth Kent, and finds his credentials impressive, and his opinions expressed within a degree of actuarial certainty. The record reveals that Mr. Kent engaged in a thorough investigation and applied sound actuarial procedures in calculating the Employer's contribution to

---

[7] Kent initially created two different reports with two different percentages of Employer's funded amount: 74.551% and 83.391%. One of the percentages took into account the funds provided by the Commonwealth and the other excluded those funds. Kent opined that these percentages were reached within a reasonable degree of actuarial certainty. Kent Dep., N.T. at 5-28; R.R. at 27a-58a.

[8] DROP is the acronym for "deferred retirement compensation (or option) plan." Simply stated, a DROP allows a participant in a pension plan to set an "official" retirement date for purposes of fixing the participant's pension benefit, while allowing the participant to continue to work for the municipality as an employee for a limited period (*e.g.,* one to five years). See Borough of Ellwood City v. Ellwood City Police Dep't. Wage Policy Committee, 2 A.3d 699 (Pa. Cmwlth. 2010).

8

> Claimant's pension. In assessing the Employer's contribution, Mr. Kent testified that when performing his analysis, he incorporated all relevant information that was provided to him by the Board of Pensions and the Claimant's own personal information.

F.F. No. 13; R.R. at 98a.

The Board accepted the WCJ's credibility findings. The Board determined that based on the express language in the WCJ's May 27, 2014 order, the corrected offset was to begin as of the date of that order. Any future benefits were to be calculated in accordance with that order. Adjustments and penalties protected the Claimant from miscalculations predating that order.

The Board also rejected Claimant's assertion that Employer was not entitled to any offset before the WCJ's order. Improper calculations did not completely negate Employer's statutory right to an offset, and the Board found neither error of law nor prejudice to Claimant from the WCJ's order. We agree with the Board.

In accordance with the mandate in Section 204(d), the Department created forms and promulgated regulations to implement an employer's offset right as established in Section 204(a), 77 P.S. §71(d). Thereafter, "[t]he employee may challenge the offset by filing a petition to review offset with the Department." 34 Pa. Code §123.5(c); (emphasis added). There is no language in the Act or in the regulations which requires an employer forfeit its rights to offset because of errors in a notice of offset. Instead, a claimant is given the right to challenge the calculations of an offset in a review proceeding. The cases relied upon by the

9

Claimant do not deal with an employer's statutory right for offset, and they do not compel a conclusion that Employer's Offset Notice was void *ab initio*.

Here, the Claimant was paid both his full workers' compensation benefits without offset and his mostly Employer-funded pension for several years. While Employer's belated Notice of Offset contained several errors, they were corrected by the WCJ, and Claimant was fully compensated for the temporary overstatement of offset. Neither the Act nor the regulations specify that correctable inaccuracies in the Notice of Offset will render the Notice void. Doing so here would work a further, unreasonable forfeiture upon Employer. Accordingly, we affirm.

ROBERT SIMPSON, Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Robert Thompson,                            :
                        Petitioner           :
                                             :
            v.                               :      No 918 C.D. 2015
                                             :
Workers' Compensation Appeal                 :
Board (City of Philadelphia),                :
                        Respondent           :

# **O R D E R**

**AND NOW**, this 17th day of March, 2016, the order of the Workers'
Compensation Appeal Board is **AFFIRMED**.

_____

ROBERT SIMPSON, Judge