# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Columbia Gas of<br>Pennsylvania, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 530 M.D. 2022 |
| | : | |
| Menallen Township and<br>Pennsylvania Public<br>Utility Commission, | : | |
| | : | |
| | : | |
| Respondents | : | Argued: December 8, 2025 |


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE WOLF                                    FILED: January 2, 2026


In this original jurisdiction action, Columbia Gas of Pennsylvania, Inc. (Columbia) challenges as preempted and *ultra vires* an ordinance of Menallen Township (Township) regulating utility development. Now before the Court are Columbia's and the Township's cross-applications for summary relief. We conclude that a portion of the relief Columbia seeks is not ripe for review, and we dismiss Counts III and IV of Columbia's Amended Petition for Review (Petition) on that basis. However, we also conclude that a portion of the Township's ordinance is preempted by state law, and we thus grant summary relief for Columbia on Counts I and II of the Petition.

# I. BACKGROUND

The underlying facts are generally undisputed. Columbia is a public utility that sells and distributes natural gas to about 444,000 retail customers in Pennsylvania. It is regulated by the Pennsylvania Public Utility Commission (PUC), including under the Public Utility Code.[1] The PUC has approved a certificate of public convenience and a tariff for Columbia. As part of its utility service, Columbia builds, maintains, and updates a high-pressure gas pipeline network on either private or public rights-of-way. Some of that network is located in the Township.

From 2016 to 2022, Columbia performed three infrastructure-expansion projects in the Township, for which it installed about 1,700 linear feet of pipe in public rights-of-way. For those projects, Columbia paid $14,259 in fees under the Township's Ordinance 178, which is the Ordinance Columbia challenges in this action. At the time it filed the Petition, Columbia had four additional projects planned in the Township that require adding or replacing approximately 7,000 feet of pipe in the Township, as follows:

> (a) 148 Stoney Point, a new facilities project requiring the installation of 410 feet of pipe;
>
> (b) Kaider Road, a pipeline replacement project requiring the installation of 5,200 feet of pipe;
>
> (c) Anthram Street, a pipeline replacement project requiring the installation of 760 feet of pipe; and
>
> (d) Duck Hollow Road, a pipeline replacement project requiring the installation of 300 feet of pipe.

Pet. ¶ 29. Columbia believes the last three projects, for replacement of existing pipeline, are required by the Public Utility Code and the PUC's regulations. On

---

[1] 66 Pa.C.S. §§ 101-3316.

2

March 10, 2023, Columbia paid, under protest, $42,542.08 in Ordinance 178 fees so that it could begin the three replacement projects.

## A. Ordinance

The Township enacted Ordinance 178 in 1997. The Ordinance generally regulates excavation or "opening" of public streets and requires a permit for any such work. Here, Columbia challenges several sections of Ordinance 178.[2]

---

[2] The following sections of Ordinance 178 are at issue in this case:

**Section 13**. <u>Restrictions Regarding Trees and Shrubbery</u>. The permission herein granted does not confer upon the permittee or its contractors the right to cut, remove or destroy trees or shrubbery within the legal right of way except under specifications, regulations and conditions as the Township of Menallen may from time to time prescribe.

**Section 14**. <u>Work Necessitating Opening or Excavation to be Done Prior to Street Improvement and Not Until Five Years Thereafter; Exception</u>. The Board of Supervisors of the Township of Menallen shall give timely notice in person or by publication to all persons owning property abutting on any street within the Township of Menallen about to be paved or improved, and to all public utility companies operating in the Township of Menallen, and all such persons and utility companies shall make all water, gas, electric, or sewer connections, as well as any repairs thereto which would necessitate excavation of the said street within thirty (30) days from the giving of such notice, unless such time is extended in writing for cause shown by the Board of Supervisors of the Township of Menallen. New paving shall not be opened or excavated for a period of five years after the completion thereof, except in case of emergency, the existence of which emergency and necessity for the opening or excavating of such paving to be determined by the Board of Supervisors of the Township of Menallen. If it is sought to excavate upon or open a roadway within five (5) years after the completion of the paving, applicant shall make written application to the Township of Menallen, and a permit for such opening shall be issued only after express approval of the Board of Supervisors of the Township of Menallen.

**Section 15**. <u>Permittee Responsibility for Future Relocation of work.</u> If at any time in the future the roadway is widened, reconstructed or the alignment or grades are changed, the permittee further agrees to change or relocate all or any part of the structures covered by this permit which interfere with the improvement of the

**(Footnote continued on next page…)**

3

Sections 13 through 16 limit the locations where excavation can occur, such as by limiting removal of trees or shrubs, prohibiting excavation of recent pavement, and regulating the depths of the facilities (Location/Relocation Provisions). Section 20 sets the following fees: a permit fee of $150 (Application Fee); inspection and supervision fees of $18-25 per hour for the Township's engineer to supervise the

roadway at its own cost and expense.

**Section 16**. <u>Conditions of Laying and Extending Utility Lines.</u> No new water, sewer, steam or gas main, electric, telephone or other utility line shall hereafter be laid or constructed, and no such existing main or line shall be extended, in any of the streets of the Township of Menallen until the plan therefor shall have been first filed with the Board of Supervisors of the Township of Menallen and such plan and the exact location of such main or line, approved by them. The Board of Supervisors of the Township of Menallen shall not approve the locating of any such main or line at a depth less than thirty ( 30 ) inches from the surface of the street unless they shall be convinced that locating the same at a depth of more than thirty ( 30) inches from the surface is impossible or impractical.

. . . .

**Section 20**. <u>Schedule of Permit and Other Fees</u>.
(1) Permit fees to accompany application: $ 150.00;
(2) Inspection and supervision fee for Menallen Township Engineer.: $ 18.00 to $ 25.00 per hour, as determined by the Menallen Township Engineer;
(3) Fee schedule per square foot for opening or excavation in an approximate size less than 50 square feet: $3.67 per square foot;
(4) Fee schedule for opening or excavations per square foot, for each square foot opened or excavated in excess of 50 square feet: $ 3.67 per square foot in excess of 50 square feet;
(5) Fee schedule for bond required: $ 25.00 per linear foot.

**Section 21**. <u>Penalties</u>. Any person, firm or corporation who shall violate any provision of this ordinance, shall, upon being found liable therefor in a civil enforcement proceeding, pay a civil fine set by the Board of Supervisors of the Township of Menallen of not more than $ 600.00 plus costs and reasonable attorneys , fees. Every day that a violation of this ordinance continues shall constitute a separate offense or occurrence.

Pet. Ex. 2.

4

work, plus $3.67 per square foot of opening/excavation (Inspection Fees); and a bond amount of $25 per linear foot.[3] Section 21 imposes a civil penalty of $600 per day on any entity that violates Ordinance 178.

The Township establishes the amounts of these fees by resolution. Resolution 221 of 2014, which Columbia also challenges here, raised the per-hour Inspection Fee from $18-$25 per hour to a minimum of $75 per hour.

### B. Amended Petition for Review

Columbia filed the Petition on March 20, 2023, after paying $42,542.78 in Ordinance 178 fees under protest for the three pipeline replacement projects. The Petition seeks declaratory and injunctive relief against the Township in four counts. Columbia generally argues that Ordinance 178 is preempted by state law applicable to public utilities and municipalities. It first asserts field preemption by the Public Utility Code, and that the PUC is the sole regulator of public utilities. It also asserts that two other statutes limit the amount of fees municipalities can charge for utility improvements. First, it cites Section 1511(e) of the Business Corporation Law,[4] which grants utility corporations the power to enter public rights-of-way for the purpose of placing utility facilities, but also requires them to obtain necessary permits and be subject to reasonable regulation by municipalities. Columbia argues Section 1511(e) limits permissible fees to cover only *entry* onto public rights-of-way, not for other purposes. Second, Columbia points to Section 2322 of The Second Class Township Code,[5] which it argues similarly allows only limited fees for purposes of *entry*, as that section has been construed by our courts. Under both

---

[3] Section 17 of Ordinance 178 requires the applicant to post a bond to cover the cost of repairing the disturbed part of the street.

[4] 15 Pa.C.S. §1511(e).

[5] Act of May 1, 1933, P.L. 69, *as amended*, added by the Act of November 9, 1995, P.L. 350, 53 P.S. § 67322.

statutes, Columbia argues the fees must be limited to the municipality's administrative costs and cannot permissibly be used to raise revenue. Columbia alleges the Inspection Fees it has paid under protest per the Ordinance are beyond the Township's costs and are revenue raising. Columbia also alleges that the fees charged under the Ordinance are far in excess of the standard municipal permit fees imposed by the Pennsylvania Department of Transportation (DOT) for applications and inspections for roadway openings.

Count I of the Petition seeks a declaration that Ordinance 178's fee structure generally is void because it conflicts with the limitations placed on municipal fees in Section 2322 of The Second Class Township Code. Count II seeks a declaration specifically that Section 20(2) of Ordinance 178 (the per-hour Inspection Fee) is ultra vires and excessive. Count III seeks a declaration that Sections 13 through 16 of Ordinance 178 (the Location/Relocation Provisions) are unlawful and unenforceable because they are preempted by the PUC's exclusive regulation of utilities. Count IV seeks a declaration that Section 21 of Ordinance 178 (the penalty provision) is unlawful and unenforceable as preempted. Each of the Counts seeks injunctive relief against the section of the Ordinance that corresponds to the requested declaratory relief. The Petition names the PUC as an indispensable party because, Columbia argues, Ordinance 178 intrudes on the PUC's exclusive regulatory role and thus gives the PUC an indispensable interest here.

No preliminary objections were filed. The Township filed an Answer and New Matter generally denying the allegations in the Petition. The Township says that Ordinance 178 and Resolution 221 are entirely lawful and do not intrude on the PUC's exclusive regulatory authority for utilities. The Township characterizes Ordinance 178 as not concerning the regulation of public utilities at

6

all. It specifically denies that Ordinance 178 generates revenue. For new matter, the Township asserts many different defenses—legal insufficiency of a claim, ripeness, statute of limitations, laches, consent, estoppel, justification, payment, license, and waiver. Columbia replied to the Township's new matter, generally denying those allegations.

The PUC, in its Answer to the Petition, specifically admits that it has a direct interest in this litigation (making it an indispensable party) and that Ordinance 178 may impermissibly encroach on the PUC's exclusive regulatory power. It also admits that the Ordinance may violate other statutory limits on municipal power, such as under the Business Corporation Law and The Second Class Township Code.

## C. Procedural History

The parties engaged in discovery. Following a status conference, the Court entered a case management order on July 24, 2024, providing for further fact and expert discovery. Discovery concluded with the deposition of Columbia's corporate designee, Scott Waitlevertch, on October 22, 2024. The Township timely served a report of its engineer expert witness, Terry McMillen, Sr., PE, PLS (McMillen Report) by the deadline established for expert discovery. Columbia filed an application to exclude the McMillen Report, which this Court denied by February 12, 2025 Memorandum and Order.

The parties have filed cross-applications for summary relief. Columbia seeks total summary relief—judgment in its favor on all counts of the Petition. For a remedy, it asks the Court to: declare Sections 13, 14, 15, 16, 20 (as amended by Resolution 221), and 21 of Ordinance 178 invalid; enjoin enforcement of those provisions; and order disgorgement of previously paid excessive fees.

The Township seeks only partial summary relief. First, it seeks a

7

judgment that it is not required to follow the DOT inspection fee schedule, which would relate to all counts of the Petition. Second, it seeks dismissal of Counts III and IV of the Petition. Those counts challenge Sections 13-16 of the Ordinance (regulations that restrict the location and methods of construction within municipal rights-of-way) and Section 21 of the Ordinance (penalty). The Township claims it has never sought to enforce those provisions, so there is no real dispute and Counts III and IV should be dismissed.

## II. DISCUSSION

We grant a Pa.R.A.P. 1532(b) application for summary relief only if the applicant's right to relief is clear, meaning the only remaining questions are legal rather than factual. *Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1220 (Pa. Cmwlth. 2018) (en banc). A genuine dispute of fact precludes summary relief. *Id.* "We review the record in the light most favorable to the opposing party and resolve all doubts concerning the existence of a genuine issue of material fact in favor of that party." *Id.*

### A. Ripeness—Counts III and IV

We first address the Township's argument that Counts III and IV of the Petition—challenging the Location/Relocation Provisions and the penalty provision of the Ordinance—are not justiciable because the Township has not sought to enforce those provisions against Columbia. "[A] court must resolve justiciability concerns as a threshold matter before addressing the merits of the case." *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021).

The Petition seeks declaratory relief authorized by the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, where "the General Assembly vested in courts the 'power to declare rights, status, and other legal relations whether or not

further relief is or could be claimed.'" *Firearm Owners Against Crime*, 261 A.3d at 482 (quoting 42 Pa.C.S. § 7532). Declaratory relief, however, "is limited by certain justiciability concerns," and "to sustain an action under the [Act], a plaintiff must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract or issuing purely advisory opinions." *Off. of Governor v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014). "[S]tanding, ripeness, and mootness are related justiciability considerations that 'are concerned with the proper timing of litigation.'" *Firearm Owners Against Crime*, 261 A.3d at 481 (quoting *Town of McCandless v. McCandless Police Officers Ass'n*, 901 A.2d 991, 1002 (Pa. 2006)). Of these interrelated doctrines, ripeness particularly asks "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Town of McCandless*, 901 A.2d at 1002 (quoting *Warth v. Seldin,* 422 U.S. 490, 499 n. 10 (1975)). "[I]n determining whether a matter is ripe for judicial review, courts generally consider whether the issues are adequately developed and the hardships that the parties will suffer if review is delayed." *Twp. of Derry v. Pa. Dep't of Lab. & Indus.*, 932 A.2d 56, 60 (Pa. 2007).

The Township points out that, in Counts III and IV, Columbia seeks a declaration regarding Section 13-16 and Section 21 of the Ordinance. Those provisions are separate from the Application Fee and Inspection Fee, for which Columbia has already made payment under protest. The Township asserts that Sections 13-16 and 21 "have never been enforced against" Columbia in any of the multiple projects Columbia has performed in the Township over the last nine years. Township's Br. in Support of Summary Relief at 17. It cites the deposition testimony of Columbia's corporate designee in support, as follows:

9

Q. But again, for those five sections [ Sections 13-16 and 21 of Ordinance 178], you agree with me that to your knowledge [the] Township hasn't sought to enforce them in any respect against Columbia [] to your knowledge?

A. That's correct.

Township's Appl. for Summary Relief, Ex. E (Columbia Gas Depo.) at 75). On the basis of that admission, the Township argues there is no controversy under Counts III and IV because the relevant provisions are not being enforced.

Columbia responds that the Declaratory Judgments Act "is to be liberally construed and administered[,]" 42 Pa. C.S. § 7541(a), and argues Counts III and IV are ripe. It asserts there is no guarantee the Township will not seek to enforce these provisions in the future, which would be unlawful. Columbia notes that our Supreme Court has already held the PUC to have exclusive and preemptive jurisdiction over "extension and expansion, hazard to public safety due to use of utility facilities, installation of utility facilities, and, *inter alia*, location of utility facilities." *PPL Elec. Utils. Corp. v. City of Lancaster*, 214 A.3d 639, 659 (Pa. 2019) (internal brackets omitted) (hereinafter *City of Lancaster*). It argues that potential future enforcement of the Location/Relocation Provisions would violate that principle, and their lawfulness is best determined here, where the PUC is a party and this is an issue of statewide significance.

We agree with the Township that the Location/Relocation Provisions and the penalty provision do not present a justiciable controversy. Columbia has admitted, through the deposition of its corporate designee, that those provisions have never been enforced against it. It is true that those provisions could one day be enforced, but that is true of any unlawful ordinance that has not been repealed. As Columbia points out, the Supreme Court has already resolved the question whether

10

municipalities may regulate the location of utility facilities. They may not. *See City of Lancaster*, 214 A.3d at 659. It may be that the Township views the Location/Relocation Provisions as unenforceable given that holding, and has thus declined to enforce them. It is possible—and likely, given *City of Lancaster* and the Township's nine-year history of nonenforcement—that the provisions challenged in Counts III and IV "will never be imposed on [Columbia], and this Court will not render a decision under such circumstances." *Ronald H. Clark, Inc. v. Twp. of Hamilton*, 562 A.2d 965, 968 (Pa. Cmwlth. 1989). If review is delayed, and those provisions are later enforced, Columbia can seek relief—including interim relief as needed—at that time. Accordingly, the Township is entitled to judgment in its favor on the challenge to those provisions, and we will dismiss Counts III and IV of the Petition as unripe for review.

## B. Merits—Counts I and II

### 1. Applicable Law

Columbia's challenges in Counts I and II, to the Application and Inspection Fees, rest largely on the doctrine of preemption, which we have explained as follows:

> There are three types of preemption: (1) express preemption, when the legislature has expressly stated its intention to displace local regulation; (2) conflict preemption, when a local regulation would conflict with the operation of state law; and (3) field preemption, when the state has implicitly but completely occupied the regulatory field in question. *See City of Lancaster*, 214 A.3d at 649. With field preemption, "the state has retained all regulatory and legislative power for itself[,] and no local legislation in that area is permitted." *Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp.*, 32 A.3d 587, 593 ([Pa.] 2011) (citation omitted).

11

*Waterford Twp. v. Pa. Pub. Util. Comm'n*, 276 A.3d 301, 306 n.12 (Pa. Cmwlth. 2022).

"[T]he General Assembly has field preempted all state and/or local laws that purport to regulate public utilities." *Id.* at 306 (citing *City of Lancaster*, 214 A.3d at 649). The Public Utility Code gives the PUC "sole and exclusive jurisdiction to promulgate rules and regulations for the allocation of natural or artificial gas supply by a public utility," 66 Pa.C.S. § 1501, and "general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth," *id.* § 501(b). The PUC may promulgate regulations as necessary and proper for those duties. *Id.*

Two other statutes are relevant to our analysis. Section 1511(e) of the Business Corporation Law[6] requires public utilities to obtain local permits to place facilities in a right-of-way. Section 2322 of The Second Class Township Code[7]

---

[6] It provides:

> Streets and other public places.--A public utility corporation shall have the right to enter upon and occupy streets, highways, waters and other public ways and places for one or more of the principal purposes specified in subsection (a) and ancillary purposes reasonably necessary or appropriate for the accomplishment of the principal purposes, including the placement, maintenance and removal of aerial, surface and subsurface public utility facilities thereon or therein. Before entering upon any street, highway or other public way, the public utility corporation shall obtain such permits as may be required by law and shall comply with the lawful and reasonable regulations of the governmental authority having responsibility for the maintenance thereof.

15 Pa. C.S. § 1511(e).

[7] It provides:

> No railroad or street railway shall be constructed upon any township road, nor shall any railroad or street railway crossings, driveway connections, gas pipe, water pipe, electric conduits or other piping be laid upon or in, nor shall any telephone, telegraph or electric light or power poles or any coal tipples or any other

**(Footnote continued on next page…)**

requires townships to collect fees for such an application and authorizes inspection and reinspection. Importantly, The Second Class Township Code "does not repeal or modify any of the provisions of [the Public Utility Code]." 53 P.S. § 68701.

Our Supreme Court's decision in *City of Lancaster* interpreted the breadth of the Public Utility Code's field preemption. 214 A.3d at 659. In that case, the City of Lancaster passed an ordinance imposing fees on utilities for the occupancy and use of the City's rights-of-way. The fees were intended to compensate the City for its actual right-of-way maintenance costs. One fee imposed,

---

obstructions be erected upon or in, any portion of a township road except under conditions, restrictions and regulations specified in permits granted by the township for that purpose. Each application shall be submitted to the township in duplicate. *The township shall collect a fee as determined by the Department of Transportation for processing the application and another fee for making the inspection.* Each application shall be accompanied by both fees. *When the township grants the permit, the board of supervisors or its agents shall inspect the work authorized by the permit upon the completion thereof and, when necessary, enforce compliance with the conditions, restrictions and regulations specified by the township.* In addition to that inspection, the board of supervisors or its agents may reinspect the work not more than two years after its completion, and if any settlement of the road surface or other defect appears in the work contrary to the conditions, restrictions and regulations of the township, it may enforce compliance therewith. If the applicant fails to rectify a defect which presents an immediate or imminent safety or health problem within forty-eight hours or any other defect within sixty days after written notice from the board of supervisors to do so, the board of supervisors or its agents may do the work and impose upon the applicant the cost thereof, together with an additional twenty percent of the cost, which may be recovered by an action in assumpsit in the court of common pleas of the county. All fees received by the township shall be paid into the township treasury. Nothing in this section shall be construed to require a permit in advance for emergency repairs necessary for the safety of the public or the restoration or continuance of public utility service or other public service, but application for the permit and the fees shall be submitted within five days after completion of the work, after which time the remaining provisions of this section apply. *Nothing in this section authorizes a township to regulate or control the operations of any permittee except under this section.*

53 P.S. § 67322.

13

the "annual occupancy fee," was essentially a maintenance fee calculated on a per-linear-foot basis and set by resolution, and was ongoing. *Id.* at 657 n.32. This Court initially struck most of the ordinance's fees as preempted, but it upheld the City's annual maintenance fee, viewing it as a function of the City's home-rule authority to recover reasonable costs associated with maintaining its rights-of-way. *Id.* at 643. The Supreme Court reversed in part, finding that even the annual maintenance fee was preempted by the Public Utility Code. *Id.* at 659. The court concluded the annual maintenance fee was a quintessential utility regulation, intended to recoup "regulatory expense of overseeing utilities' conduct within [the City's] jurisdiction." *Id.* The Court also found that the municipal fee was "materially congruent to the state-level costs embedded in the state tariff [assessed by the PUC] that utilities already bear." *Id.* The court reasoned that because "the tariff is a utility regulation," and the municipal maintenance fee is no different from the tariff, the fee was also a utility regulation that is preempted by the Public Utility Code. *Id.*

The *City of Lancaster* court did not consider the effect of other state statutes that expressly allow municipalities to charge utility project fees that are different from—not "materially congruent to"—state-level fees. We confronted that question in *Waterford Township*, 276 A.3d 301. There, a telecom provider applied to Waterford Township for permits to install fiber-optic cables at 15 different locations. The township's ordinance established the following fees: "[A]n application fee ($50.00), inspection fee ($250.00), location fees ($10.00 or $20.00[ depending upon location type]), and a refundable bond ($500.00) for each of the 15 locations." *Id.* at 302-03. In total for the 15 permits, the utility paid $4,690 in nonrefundable fees and $7,500 in refundable bond fees. *Id.* at 303. Waterford Township did not charge a per-foot fee or per-hour fee. *See id.*

14

The utility challenged the fees before the PUC. The PUC issued a declaratory order upholding the application fee but striking down the separate "inspection" fee as preempted, citing *City of Lancaster*. We reversed, concluding that Waterford Township's limited and reasonable fees were permissible and not preempted. *Waterford Township*, 276 A.3d at 308. We reasoned that while the General Assembly has field-preempted utility regulation, local governments retain limited authority to impose reasonable permitting fees for access to rights-of-way. This authority is reflected in Section 1511(e) of the Business Corporation Law and Section 2322 of The Second Class Township Code, which allow local governments to manage entry onto their rights-of-way without constituting utility regulation. We observed that Waterford Township's fees merely regulated entry to public rights-of-way, and that the permits issued thereunder did not impose "conditions, restrictions[, or] regulations" on the utility work, but "merely require that a permittee timely commence and complete its work or be subject to further fees." *Waterford Township*, 276 A.3d at 308. We concluded:

> Clearly, [Waterford Township's fees] are not maintenance fees, nor is there any reason to suspect their purpose is to facilitate inspection of utility facilities for [Public Utility] Code compliance or enforcement of [Public Utility] Code regulations. Simply, if a public utility applies for access to a particular [right-of-way], the local government responsible for maintaining the [right-of-way] may confirm by inspection that the applicant has acted in conformity with its application. The Township's inspection and location fees enable this confirmation. In our view, they are permissible.

*Id.* Thus, our decision in *Waterford Township* reconciled *City of Lancaster*'s holding—general field preemption under the Public Utility Code—with the necessary local permitting process.

## 2. Parties' Arguments

Columbia argues the challenged provisions—which, accounting for our dismissal of Counts III and IV, are the Application and Inspection Fees—are field preempted under *City of Lancaster*. Columbia acknowledges that *City of Lancaster* did not address one-time permitting fees, but it notes that excessive fees like those challenged here implicate the same concerns about statewide utility regulation. It asserts that the Township's Inspection Fees are unreasonably high and, if they are permitted, the statewide utility development guaranteed by the Public Utility Code cannot occur.

Columbia asks us to distinguish *Waterford Township*. It emphasizes that the total $42,542.08 fee for 4 projects in this case is about 10 times greater than the fee for 15 projects that we upheld in *Waterford Township*. It adds that, unlike in *Waterford Township*, there is evidence that the fee charged here is greater than the actual cost of the application/permitting process for the Township. Columbia points out that the Township is purporting to regulate more than just entry: it is supervising excavation, restoration, placement, and tying-in of utility lines. Columbia views this close supervision as tantamount to utility regulation, not entry regulation and permitting authorized under *Waterford Township*. Columbia adds that the Township does not appear to dispute that the fees it collects are greater than its actual costs, even for the level of supervision the Township demands.

The Township responds that material disputes of fact preclude summary relief for Columbia. It views Columbia's argument not as a legal one, but as claiming that the Township's fees are factually unreasonable. The Township notes its statutory right or duty to collect two separate fees under The Second Class Township Code—an application fee and an inspection fee. The Township relies on

*Waterford Township*, arguing that because we found local permitting fees lawful there, its fees are lawful also. Concerning the amount of its fees, the Township insists there is no legal obligation for its fee schedule to match the DOT fee schedule. It relies on the McMillen Report as supporting a genuine dispute that the amount of the fees is reasonable, not excessive.

*3. Analysis*

We note initially that the two remaining fees operate differently from one another, and we will address them separately. The Application Fee is a flat fee of $150 per permit under Section 20(1) of the Ordinance. That is the same type of entry-focused—as opposed to regulation-focused—fee that we held permissible in *Waterford Township*. We agree with the Township that the Application Fee is at least arguably a reasonable permitting fee under our precedent interpreting The Second Class Township Code. *See Waterford Township*, 276 A.3d at 308. Accordingly, we will not grant summary relief in Columbia's favor on the Application Fee, i.e., as to Section 20(1) of the Ordinance.

We agree with Columbia, however, that the Inspection Fees of Sections 20(2)-(4) of the Ordinance are, as a matter of law, not permissible. Unlike the flat Application Fee, the Inspection Fees vary with the size of the utility project on a per-square-foot or per-hour basis. That was not true of *any* of the fees we upheld in *Waterford Township*. As a result, the fees charged here are roughly 10 times greater than the fees we have previously upheld. Although the sheer amount of the fees is not dispositive under *Waterford Township*'s rule, it does draw our attention to the reason for those fees, which is dispositive. The Inspection Fees here are, beyond any reasonable factual dispute on this record, not merely for inspection either of "entry" onto the right-of-way or of whether "a permittee timely commence[d] and

17

complete[d]" the permitted work. *Waterford Township*, 276 A.3d at 308. We agree with Columbia that the Inspection Fees are intended to cover, at least, detailed inspections of its installation of pipe and monitoring of future road conditions, which is tantamount to and duplicative of utility regulation already addressed by the Public Utility Code.

The McMillen Report, on which the Township relies, does not reflect a genuine factual dispute; rather, it supports the view that the Inspection Fees are not permit- or entry-focused. The report states the Township's view that the "spot inspections" envisioned in the DOT fee schedule are "not adequate to protect the integrity of the [T]ownship roadway" because the Township's inspector must monitor the backfill material and compaction of the project. Township's Appl. for Summary Relief, Ex. D (McMillen Report) at 1-2. Further, opening a roadway will inherently require "future repairs," which in the report's view justifies the much larger Inspection Fees. The report suggests that projects in the Township simply "require more inspection to confirm that the applicant has acted in conformity with its application" than would be true of projects elsewhere. *Id.* The report concludes by comparing the Township's Inspection Fees favorably with those of South Union Township, another municipality. It opines that "the fees charged by [the Township] for Street Excavation and Openings are both appropriate and adequate and not unreasonable *when compared to South Union Township*." *Id.* (emphasis added).

Upon consideration, Columbia has established a clear right to relief on the Inspection Fees, i.e., Section 20(2)-(4) of the Ordinance. Those fees are obviously intended to procure the Township's own preferred, thorough inspection of utility facilities. They do not relate to permitting or entry onto the right-of-way. In that sense, the fees differ markedly from the flat, location-specific fees authorized

under *Waterford Township*. These Inspection Fees are more similar to the ongoing maintenance fee found unlawful in *City of Lancaster*. If we were to find the Inspection Fees permissible, nothing would prevent each municipality in Pennsylvania from demanding its own specifications—fill material, compaction, ongoing maintenance—for any statewide utility project and inspection for them. That would bring into being "the convolution of fragmentary local regulation of public utilities" that our General Assembly has foreseen and forbidden. *City of Lancaster*, 214 A.3d at 659.

It is no answer that the Township's Inspection Fee may be similar to another municipality's fee, or comparatively reasonable, as the McMillen Report opines. The standard is not comparative; it is whether the fees are actually utility regulations, as opposed to permissible permitting regulations. The Township does not appear to dispute that the Inspection Fees are imposed, at least in part, to pay for its preferred, heighted inspection of the quality of Columbia's installation work and the "probability of future repairs required." McMillen Report at 2. Given Columbia's showing of the magnitude and purpose of the Inspection Fee, we conclude that nothing in the record—including the opinion testimony in the McMillen Report—supports a dispute of fact about the fees' lack of a reasonable relation to permitting and entry. Accordingly, we will grant summary judgment in favor of Columbia on Counts I and II of the Petition as to the Inspection Fees.[8]

## IV. CONCLUSION

For the foregoing reasons, we grant the Township's cross-application for summary relief and dismiss Counts III and IV of the Petition as not ripe for review. Further, we grant in part Columbia's cross-application for summary relief

---

[8] Given this conclusion, we do not reach Columbia's argument that Ordinance 178 imposes unconstitutional taxes. *See* Columbia's Br. in Support of Summary Relief at 32-37.

19

and enter judgment for Columbia on Counts I and II of the Petition as they relate to Section 20(2)-(4) of Ordinance 178.

_____
MATTHEW S. WOLF, Judge


President Judge Cohn Jubelirer and Judge Fizzano Cannon did not participate in the decision in this matter.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Columbia Gas of | : | |
| Pennsylvania, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 530 M.D. 2022 |
| | : | |
| Menallen Township and | : | |
| Pennsylvania Public | : | |
| Utility Commission, | : | |
| Respondents | : | |

# **O R D E R**

AND NOW, this 2nd day of January, 2026, the Court hereby ORDERS as follows:

1. Respondent Menallen Township's (Township) cross-application for summary relief is GRANTED, and Counts III and IV of the above-captioned Amended Petition for Review (Petition) are DISMISSED.

2. Petitioner's cross-application for summary relief is GRANTED IN PART, and judgment is entered in favor of Petitioner on Counts I and II of the Petition, as follows:

    a. Sections 20(2)-(4) of the Township's Ordinance 178 is hereby declared unenforceable as preempted by the Public Utility Code.[9]

    b. The Township is ENJOINED from enforcing Section 20(2)-(4) of Ordinance 178 against Petitioner.

---

[9] 66 Pa.C.S. §§ 101-3316.

c. The Township is ORDERED to return to Petitioner all amounts paid under protest under Section 20(2)-(4) of Ordinance 178.

3. To the extent Counts I and II of the Petition challenge other provisions of Ordinance 178, Petitioner's cross-application for summary relief is DENIED.

_____
MATTHEW S. WOLF, Judge